## <u>NOTICE OF ORDER</u>

On June 26, 2020, in another action, the Honorable Jesse M. Furman of the United States District Court for the Southern District of New York entered an Opinion and Order directing that Mr. Liebowitz and LLF file a copy of that Opinion and Order in all currently pending cases. A copy of Judge Furman's order is attached hereto.

Mr. Liebowitz and LLF strongly contest Judge Furman's factual findings and legal conclusions, and have appealed the Opinion and Order to the United States Court of Appeals for the Second Circuit.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC,

**/s/Richard Liebowitz**
Richard Liebowitz

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                          :

ARTHUR USHERSON,                              :
                                                            :

                         Plaintiff,            :                    19-CV-6368 (JMF)
                                                          :

            -v-                           :            OPINION AND ORDER
                                                          :

BANDSHELL ARTIST MANAGEMENT,      :
                                                          :

                        Defendant.          :
                                                            :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Richard Liebowitz, who passed the bar in 2015, started filing copyright cases in this

District in 2017. Since that time, he has filed more cases in this District than any other lawyer: at

last count, about 1,280; he has filed approximately the same number in other districts. In that

same period, he has earned another dubious distinction: He has become one of the most

frequently sanctioned lawyers, if not *the* most frequently sanctioned lawyer, in the District.

Judges in this District and elsewhere have spent untold hours addressing Mr. Liebowitz's

misconduct, which includes repeated violations of court orders and outright dishonesty,

sometimes under oath. He has been called "a copyright troll," *McDermott v. Monday Monday,*

*LLC*, No. 17-CV-9230 (DLC), 2018 U.S. Dist. LEXIS 184049, at *9-10 (S.D.N.Y. Oct. 26,

2018); "a clear and present danger to the fair and efficient administration of justice," *Mondragon*

*v. Nosrak LLC*, No. 19-CV-1437 (CMA) (NRN), 2020 WL 2395641, at *1, *13 (D. Colo. May

11, 2020); a "legal lamprey[]," *Ward v. Consequence Holdings, Inc.*, No. 18-CV-1734 (NJR),

2020 WL 2219070, at *4 (S.D. Ill. May 7, 2020); and an "example of the worst kind of

lawyering," *id*. at *3.  In scores of cases, he has been repeatedly chastised, warned, ordered to complete ethics courses, fined, and even referred to the Grievance Committee.  And but for his penchant for voluntarily dismissing cases upon getting into hot water, the list of cases detailing his misconduct — set forth in an Appendix here — would undoubtedly be longer.

One might think that a lawyer with this record would tread carefully, particularly before a judge who had recently sanctioned him.  *See Rice v. NBCUniversal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019).  But — as this case makes clear — not Mr. Liebowitz.  In November of last year, Mr. Liebowitz appeared, in the company of a criminal defense lawyer, before another judge on this Court after being held in contempt for repeatedly lying, including under oath, about the date his own grandfather had died to justify his failure to attend a court conference.  *See Berger v. Imagina Consulting, Inc*., No. 18-CV-8956 (CS), ECF No. 62 (S.D.N.Y. Nov. 13, 2019) ("*Berger* Tr.").  The very next day, he appeared before the undersigned and — despite an explicit warning to be "very, very, very careful about the representations" he made in court — lied about his compliance with a court Order that had required an in-person mediation.  *See* ECF No. 50 ("Initial Conf. Tr."), at 7.  Making matters worse, Mr. Liebowitz then repeated that lie, over and over, and ultimately under oath during an evidentiary hearing.  On top of that, he violated at least six court Orders.  And to cap it off, defense counsel discovered only after incurring the expenses of litigating the case that the Complaint Mr. Liebowitz prepared and filed contained a false allegation — namely, that the photograph at issue in this case had previously been registered with the Copyright Office — that would have required dismissal of the lawsuit at its inception.

In the view of the undersigned, this misconduct, when viewed in light of Mr. Liebowitz's

deplorable record, confirms a conclusion that others have reached: that "steps should be taken promptly . . . to suspend his ability to file new cases," at least until "he has demonstrated" that he can comply "with court rules and rules of professional conduct." *Mondragon*, 2020 WL 2395641, at *1. But that is a question for another body — the Grievance Committee of this Court — and for another day. The question for today is what sanctions, if any, this Court should impose on Mr. Liebowitz for his misconduct in this case. For the reasons stated below, the Court concludes that sanctions are amply justified, indeed all but required, and orders a mix of substantial monetary and non-monetary sanctions against Mr. Liebowitz and his firm. The Court also refers Mr. Liebowitz to the Court's Grievance Committee to evaluate whether he should be allowed to continue practicing law in this District.

## BACKGROUND

### A. Mr. Liebowitz's Initial Violations of the Court's Orders

Mr. Liebowitz, as counsel for Arthur Usherson, filed the Complaint in this case on July 10, 2019, alleging that Bandshell Artist Management ("Bandshell") had infringed on Mr. Usherson's copyright for a photograph of musician Leon Redbone (the "Photograph"). ECF No. 1, at ¶ 1. Paragraph 9 of the Complaint alleges that, prior to suit being filed, "[t]he Photograph was registered with the United States Copyright Office and was given Copyright Registration Number VAu 1-080-046" (the "046 Registration"). *Id*. ¶ 9.

Shortly after the Complaint was filed, the Court issued two Orders: one scheduling an initial pretrial conference for October 10, 2019, and one referring the case to the Court-annexed Mediation Program for early mediation. ECF Nos. 5-6. More specifically, the mediation Order required the parties to conduct a mediation in accordance with the Mediation Program's

3

procedures "at least two weeks prior to the Initial Pretrial Conference" — that is, by September 26, 2019. ECF No. 6. In addition, to "facilitate prompt mediation," Plaintiff was ordered to file proof of service of the summons and Complaint "no more than three days after service has been effected," and to produce limited discovery relating to the licensing of the Photograph "by the earlier of 14 days after service of process or three business days in advance of any mediation session." *Id*.

Mr. Liebowitz failed to comply with these mandates. First, although the summons and Complaint were served on Bandshell on September 5, 2019, Mr. Liebowitz did not file proof of that service until September 21, 2019. ECF No. 7. Second, he failed to produce the required discovery by September 19, 2019, fourteen days after service was made. When defense counsel followed up about the missing discovery, Mr. Liebowitz responded on September 20, 2019: "My client is still looking but as of now doesn't look like any licensing for this photo." ECF No. 16, at 12. Finally, Mr. Liebowitz failed to participate in mediation by September 26, 2019, two weeks before the initial pretrial conference originally scheduled for October 10, 2019. Instead, more than a week *after* the deadline passed, Mr. Liebowitz filed a letter in which he suggested that the mediation had not taken place because of a failure on the part of the Mediation Office to assign a mediator. *See* ECF No. 12. In the same letter, Mr. Liebowitz requested leave to hold a telephonic mediation on October 8, 2019, or an extension of the mediation deadline and adjournment of the initial pretrial conference. *Id*.

In an Order dated October 7, 2019, the Court admonished Mr. Liebowitz for unfairly trying to place blame on the Mediation Office for his own failure to meet the mediation deadline. *See* ECF No. 13. The Court nevertheless concluded that "early mediation in the normal course

4

(i.e., in person) makes sense." *Id*. Accordingly, the Court adjourned the initial pretrial

conference to November 14, 2019, and ordered, in no uncertain terms, that "[t]he parties shall

conduct the in-person mediation no later than October 31, 2019." *Id*. In an email exchange later

that day, Bandshell's counsel, Brad Newberg, asked Mr. Liebowitz "if any of October 11, 16, 28

or 31 work for the [*sic*] both of you and Mr. Usherson." ECF No. 16, at 27. Mr. Liebowitz

responded that "October 31st at 12pm works." *Id*. The mediator (the "Mediator") — a member

of this Court's mediation panel, but recruited by Mr. Liebowitz himself to mediate this particular

case — approved the date and scheduled the mediation. ECF No. 39, at 2.[1]

On October 31, 2019, however, neither Mr. Liebowitz nor Mr. Usherson showed up at

the mediation. Instead, Mr. Liebowitz sent two associates — James Freeman and Rebecca

Liebowitz (Mr. Liebowitz's sister). ECF No. 23, at 2. Neither had entered an appearance in this

case. In fact, Mr. Liebowitz did not even tell Mr. Freeman about "the existence of this matter"

until "about 8:00 p.m. on October 30, 2019," the night before the mediation. *Id*. at 1. Ms.

Liebowitz, moreover, was a "newly admitted" lawyer who was attending only "to 'shadow' Mr.

Freeman and learn from the process." ECF No. 24, at 1. Mr. Freeman and Ms. Liebowitz spoke

briefly with Mr. Newberg and Bandshell's principal, who did attend in person, but no settlement

was reached. The Mediator later attributed the failure to reach an agreement in part to "the lack

of personal appearance[s]" by Mr. Liebowitz and Mr. Usherson. ECF No. 39, at 2.

**B. Bandshell's Motion for Sanctions**

On November 6, 2019, approximately one week before the initial pretrial conference,

---

[1]     It is unusual — and arguably improper — for counsel on one side to recruit a mediator; in
the normal course, to help ensure the mediator's neutrality, the Mediation Office assigns the
mediator. But Bandshell consented to Mr. Liebowitz's selection of the Mediator in this case, and
the Mediation Office raised no objection to the selection.

Bandshell moved for sanctions against Mr. Liebowitz and Mr. Usherson. ECF No. 14. Bandshell argued that Mr. Liebowitz and Mr. Usherson had violated the Court's Orders regarding the mediation, pre-mediation discovery, and proof of service. ECF No. 15. Bandshell sought monetary sanctions "jointly against Plaintiff and its counsel," including costs and attorney's fees, as well as dismissal of the case. *Id.* at 13. In response, Mr. Liebowitz asserted — repeatedly — that he and Mr. Usherson had received approval in advance from the Mediator not to appear at the mediation in person. Mr. Liebowitz made this claim first in a joint letter filed shortly before the initial pretrial conference. *See* ECF No. 18-1. In that letter, Mr. Liebowitz claimed that the Mediator had "indicated that Plaintiff was permitted to appear telephonically under Rule 9F of the mediation program." *Id.* at 2. Notably, in the same section of the letter, Bandshell responded that "virtually everything in Plaintiff's statement is *false*, and Defendant's counsel has warned Plaintiff against filing a false statement regarding the scheduled mediation with the Court." *Id.*

Mr. Liebowitz doubled down in his next submission: his initial "response" to the sanctions motion, which took the form of a three-page letter (in violation of Local Rule 7.1, which requires that, with limited exceptions inapplicable here, opposition to a motion must be in the form of a memorandum of law). *See* ECF No. 19. To the extent relevant here, Mr. Liebowitz asserted in that letter that "[n]othing in the Court order or mediation rules states that lead counsel needs to attend the mediation." *Id.* at 1. Rule 9(c) of the Mediation Program's Procedures, however, provides explicitly that "[e]ach represented party must be accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter." Rule 9(c), Procedures of the S.D.N.Y. Mediation Program (Dec. 26, 2018) ("Mediation Rules"),

*available at* https://www.nysd.uscourts.gov/sites/default/files/2019-12/Mediation%20Program%20Procedures.final_.2018.pdf. More significantly for present purposes, Mr. Liebowitz represented that Mr. Usherson had "obtained permission from the assigned mediator . . . to appear at the scheduled mediation by telephone provided that counsel was present in person." ECF No. 19, at 2 (citing Rule 9(f) of the Mediation Rules, which allows "a party" who resides "more than 100 miles from the Courthouse" to participate in a mediation by telephone with the advance approval of the mediator). He further claimed that he had "told [the Mediator] that an associate of Liebowitz Law Firm with knowledge of the facts of the case would appear in-person, and [the Mediator] consented." *Id*.

## C. The Initial Pretrial Conference

On November 14, 2019, the Court held the initial pretrial conference. Mr. Liebowitz appeared on behalf of Mr. Usherson as "the attorney who will serve as principal trial counsel." *See* ECF No. 5, at 1. Presumably in light of the pending sanctions motion, Mr. Freeman appeared, but only on behalf of Mr. Liebowitz and the Liebowitz Law Firm, PLLC. *See* Minute Entry (Nov. 14, 2019); *see also* ECF No. 66, Transcript of Jan. 8, 2020 Hearing ("Hearing Tr."), at 18. Notably, the conference took place one day after Mr. Liebowitz had been dressed down by the Honorable Cathy Seibel for falsely — and repeatedly — representing to her, in some cases under oath, that he had failed to appear at a conference due to the death of his grandfather. Those lies and Mr. Liebowitz's repeated refusal to provide documentation regarding his grandfather's death in violation of court orders had led Judge Seibel to hold Mr. Liebowitz in contempt; to fine him (initially $100 per day and later $500 per day of noncompliance); and to order him to appear on pain of "arrest by the United States Marshals Service." *Berger v.*

*Imagina Consulting, Inc*., No. 18-CV-8956 (CS), 2019 WL 6695047, at *3 (S.D.N.Y. Nov. 1,

2019).  At the November 13th conference (to which Mr. Liebowitz was accompanied by a

criminal defense lawyer), Judge Seibel chastised Mr. Liebowitz in no uncertain terms for his

"multiple lies."  *Berger* Tr. 19-20, 25.  Even then, he sought to minimize his misconduct, calling

it an "honest mistake" — for which Judge Seibel took him to task.  *Id*. at 31-32 ("[T]his clearly

was not an honest mistake; and even if it were at first, it very quickly became . . . a concerted

campaign of deception.").  Judge Seibel advised that she "question[ed] Mr. Liebowitz's fitness to

practice," not just because of his initial "dishonesty" about the date of his grandfather's death,

but because of his subsequent "failure to own up to the dishonesty and the doubling and

quintupling and octupling down on the dishonesty."  *Id*. at 14.  She rejected Mr. Liebowitz's

counsel's request to vacate her contempt orders and referred the matter to the Court's Grievance

Committee.  *Id*. at 27.

The very next day, appearing at the initial pretrial conference in this case, Mr. Liebowitz

claimed that he had sought permission from the Mediator for Mr. Usherson, who lives in

Georgia, to appear telephonically at the October 31, 2019 mediation and that the Mediator had

"said yes."  Initial Conf. Tr. 6-7.  Aware of the proceedings before Judge Seibel, the Court then

stopped Mr. Liebowitz and warned him: "I want to caution you that you're already in a lot of hot

water in this Court, and I think you know that.  In that regard, I would be very, very, very careful

about the representations you make to me.  If you prefer to let Mr. Freeman do the speaking, that

is one thing, although they are still representations on your behalf."  *Id*. at 7.  The Court then

asked when Mr. Liebowitz had advised the Mediator that Mr. Usherson was not going to appear

in person at the mediation, and the following colloquy occurred:

|               |                                                              |
| ------------- | ------------------------------------------------------------ |
| Mr. Liebowitz: | I don't know the exact date, but it was before the mediation, and he said yes. |
| The Court:    | [By] what means did you do that?                             |
| Mr. Liebowitz: | It was telephone.                                           |
| The Court:    | And you personally advised him?                             |
| Mr. Liebowitz: | I personally.                                              |
| The Court:    | And he said that was okay?                                  |
| Mr. Liebowitz: | He said that was okay.                                     |

*Id*. at 7.  The Court also heard from Mr. Freeman, who stated that he had "learned about the existence of the case at approximately 8:00 o'clock pm on October 30th, so it was the night before the mediation."  *Id*. at 9.  Mr. Freeman represented that he "had no knowledge one way or the other as to what clearances were made in terms of telephonic appearances."  *Id*.

Separate and apart from the issues surrounding the mediation, Mr. Newberg raised a question at the initial pretrial conference about whether the Photograph had actually been registered before the lawsuit was filed, as Paragraph 9 of the Complaint alleged.  That was a matter of significance because Section 411(a) of the Copyright Act provides (with certain exceptions not relevant here) that "no civil action" for copyright infringement "shall be instituted until . . . registration of the copyright claim has been made."  17 U.S.C. § 411(a).  In light of this requirement and a 2019 Supreme Court decision, this Court had held a few months before this case was filed that a suit filed pre-registration is fatally flawed and cannot be cured by "post-registration amendment" of the complaint, and thus must be dismissed.  *See Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019).  Mr. Newberg advised that, the day before the initial conference, he had "discovered that after this

case was filed, Mr. Usherson filed a copyright registration, which . . . seems to be on these photographs, so now it is unclear whether the registration in the complaint actually does cover the photograph or if it is the new copyright registration."  Initial Conf. Tr. 17.  Recognizing that the case would have to be dismissed if the Photograph had not been registered before the Complaint was filed, Mr. Newberg requested "discovery purely on those aspects early."  *Id*.  Mr. Liebowitz responded: "I don't know what defense counsel means about other registrations or other photographs.  I will have to see what my office did, but this is the correct registration."  *Id*. at 17-18.  Mr. Liebowitz argued against limited discovery or early summary judgment on the registration issue, stating that "the appropriate thing to do at this stage is to just set discovery, set the dates, and let the parties engage and hopefully during that process the parties could eventually get to a settlement number."  *Id*. at 18, 22.

**D.  Mr. Liebowitz Repeats His Mediation Claim — Again and Again**

Following the initial pretrial conference, the Court ordered Mr. Liebowitz to file a formal opposition to the motion for sanctions and directed both sides to address "whether the court should hold an evidentiary hearing and, if so, what witnesses should be called and how it should be conducted."  ECF No. 20, at 6.  Mr. Liebowitz filed a formal opposition, but — disregarding the Court's Order — he failed to address the evidentiary hearing.  *See* ECF No. 21.  Instead, he doubled down again (quadrupled down, perhaps) on his claim that Mr. Usherson had "obtained permission from the assigned mediator . . . to appear at the scheduled mediation by telephone provided that counsel was present in person" and that the Mediator had "consented to" Mr. Liebowitz's associate appearing instead of Mr. Liebowitz.  *Id*. at 2-3.  In support of his opposition, Mr. Liebowitz submitted a declaration, in which he stated "under penalty of perjury"

that "I sought and received approval from . . . the assigned mediator for Mr. Usherson to attend the mediation via telephone and for my associate James Freeman to appear who had full knowledge of the case. I obtained [the Mediator's] consent via telephone." ECF No. 22, at 3.

Mr. Freeman and Ms. Liebowitz also submitted declarations in connection with the opposition. ECF Nos. 23-24. Mr. Freeman confirmed that he did not learn of the "existence of this matter" until "about 8:00 p.m. on October 30, 2019." ECF No. 23, at 1. Mr. Freeman further explained that Mr. Liebowitz had "notified [him] of the time/place of the mediation, sent [him] copies of the complaint and the most recent settlement agreement draft, informed [him] of the price agreed to and the outstanding non-monetary terms concerning right of publicity," and "indicated that the case was likely to settle that evening but that if it didn't, [he] should be prepared to attend the mediation in person." *Id*. at 1-2. Notably, Mr. Freeman did not say that Mr. Liebowitz had ever mentioned getting approval from the Mediator for Mr. Liebowitz and Mr. Usherson not to be present. Nor did Ms. Liebowitz in her declaration. *See* ECF No. 24.

In connection with Bandshell's reply, Mr. Newberg submitted another declaration. ECF Nos. 35-36. Mr. Newberg took issue with Mr. Liebowitz's claims that he had secured advance approval from the Mediator for Mr. Usherson not to appear in person at the mediation and Mr. Freeman to attend on Mr. Liebowitz's behalf, citing emails showing that, "even as late as October 30" — the night before the mediation — the Mediator and Mr. Newberg "were under the impression that Mr. Liebowitz (as lead and only admitted counsel) and Mr. Usherson would be at the mediation in person." ECF No. 36, ¶ 9. Mr. Newberg noted that, because he was "concerned at what appeared to be false statements being made to the Court by Mr. Liebowitz," he called the Mediator on November 19, 2019. *Id*. ¶ 21. According to Mr. Newberg, the

Mediator said that there had been "other mediations where he allowed Mr. Liebowitz's client to appear by phone, but he stated clearly and pointedly . . . that **this was not one of them**." *Id*. ¶ 23 (emphasis in original). The Mediator allegedly also said that, on "the night of October 30," Mr. Liebowitz had "called and *informed* him (without asking for approval) that Mr. Liebowitz was out of town and that Mr. Liebowitz's associate would be at the mediation instead." *Id*. ¶ 24. In that call, "no mention was made of Mr. Usherson at all." *Id*. ¶ 25. The Mediator "only found out that Mr. Usherson would not be at the mediation" at the mediation itself. *Id*.

Prompted by these submissions, the Court issued a Memorandum Opinion and Order directing the Mediator to file a declaration "detailing any and all communications with Liebowitz regarding Liebowitz's personal attendance at the mediation and Plaintiff's participation by telephone in the mediation." *Usherson v*. *Bandshell Artist Mgmt*., No. 19-CV-6368 (JMF), 2019 WL 6702069, at *3 (S.D.N.Y. Dec. 9, 2019). More specifically, the Court instructed the Mediator to "specify whether (and if so, when and how) he gave Liebowitz permission (1) not to appear personally at the mediation (and to send an associate instead); and (2) for Plaintiff not to appear at the mediation in person and to appear by telephone instead." *Id*. The next day, the Mediator submitted a declaration, which stated that, on October 30, 2019, he had "talked to Mr. Liebowitz and was informed that the mediation was on. He did not inform me that he would not personally appear but through an associate. But I have mediated a few prior mediations involving Mr. Liebowitz where on at least one occasion that office appeared by an associate without incident." ECF No. 39, at 2. The Mediator further stated: "At no time was I informed that the plaintiff would not personally appear but would be available by telephone. I should say that in a few prior mediations his client appeared by telephone without incident. On this

occasion no discussion was had by me as to client appearance." *Id*.

On December 16, 2019, Mr. Liebowitz filed a letter stating that he "contests certain statements proffered by the Mediator in his declaration." ECF No. 41, at 1. Once again, Mr. Liebowitz asserted that he had "notified the Mediator that Mr. Usherson would be appearing telephonically and that such request was granted." *Id*. at 3. But the December 16th letter also proffered a new line of defense: that the Mediator in this case had a "custom and practice" of granting Mr. Liebowitz's clients permission to appear telephonically at mediations. *Id*. at 1-2. Mr. Liebowitz cited five prior cases in which the Mediator had allegedly granted his clients permission to appear telephonically; in one of these five cases, he maintained, the Mediator also granted Mr. Liebowitz permission to send an associate on his behalf. *Id*. at 2. Mr. Liebowitz insisted: "This . . . corroborates Mr. Liebowitz's testimony and establishes a 'pattern or practice' of conduct showing that Mr. Liebowitz harbored a good faith belief that the requisite permissions were granted by the Mediator in this case." *Id*. at 2.

**E. The Voluntary Dismissal and the Evidentiary Hearing**

In light of the factual disputes surrounding whether and when Mr. Liebowitz had obtained permission from the Mediator to send an associate in his place and to have Mr. Usherson participate by telephone, the Court determined that an evidentiary hearing was necessary. *See* ECF No. 42. On December 17, 2019, the Court issued an Order scheduling the hearing and directing Mr. Liebowitz, Mr. Newberg, and the Mediator to appear for testimony. *Id*. Just two days later, Mr. Liebowitz filed a stipulation of voluntary dismissal signed by both parties, providing that the case "should be dismissed with prejudice with each side to bear its own costs and attorney's fees." ECF No. 45. In a letter filed the same day, Mr. Newberg noted

that Bandshell had stipulated to Mr. Usherson's "withdr[awal of] the . . . case with prejudice," but pointedly noted that he and his client "would not have so stipulated" had his firm "not been representing [Bandshell] pro bono." ECF No. 46. The Court so-ordered the voluntary dismissal but retained jurisdiction "to adjudicate Defendant's pending motion for sanctions and any other sanctions-related matters" and affirmed that the hearing would proceed as planned. ECF Nos. 47-48. The Court noted that dismissal did not moot the motion for sanctions — citing as support for that proposition a prior opinion in which the Court had imposed sanctions on Mr. Liebowitz despite a voluntary dismissal. ECF No. 47 (citing *Rice*, 2019 WL 3000808, at *4).

On January 8, 2020, the Court held the evidentiary hearing, with Mr. Liebowitz, Mr. Newberg, and the Mediator appearing as witnesses. The Court treated the witnesses' prior declarations as their direct testimony. This meant that Mr. Freeman, appearing on Mr. Liebowitz's behalf, had to make an application to expand the record to include Mr. Liebowitz's testimony on the "custom and practice" argument raised for the first time in the December 16th letter, as Mr. Liebowitz's declaration (submitted on November 18, 2019) made no mention of it — underscoring the argument's belated nature. Hearing Tr. 4-6. Mr. Freeman argued that if the Mediator did grant Mr. Liebowitz permission for his clients to appear telephonically on five prior occasions, "it could well be that the mediator simply forgot that he did so in this case . . . . Perhaps it didn't register in his consciousness." *Id*. at 4-5. The Court granted the application, and Mr. Liebowitz recounted that, in five prior cases, the Mediator had orally granted him permission to have his clients appear telephonically at the mediation; in one of those cases, he claimed, he "obtain[ed] permission for [his] associate to appear in [his] stead" as well. Hearing Tr. 7-11. On cross-examination, Mr. Liebowitz repeatedly adverted to the alleged "custom and

14

practice" of the Mediator to allow parties to appear telephonically. *See id*. at 21, 31, 45, 46, 73, 75. But Mr. Liebowitz was also compelled to admit that, in one of those very cases, he himself had objected to the other party appearing telephonically on the ground that the rules of the Mediation Office required parties to appear in person. *Id*. at 11-16; *see Sadowski v. Seeking Alpha Inc*., 18-CV-9193 (VM), ECF No. 21 (S.D.N.Y. May 1, 2019) (describing an email from Mr. Liebowitz to opposing counsel stating that the "rules of the mediation office requires [*sic*] parties to attend in person" (internal quotation marks omitted)).

On the subject of his communications with the Mediator in this case, Mr. Liebowitz claimed that, at about 7:30 to 8:00 p.m. on October 30, 2019, the night before the mediation, he had called the Mediator from Los Angeles, California, and asked for permission for Mr. Usherson to appear by telephone from Georgia and for Mr. Freeman to appear as counsel. Hearing Tr. 21-22, 27, 45. Mr. Liebowitz testified that the Mediator had approved both requests. *Id*. at 21-22. Mr. Liebowitz acknowledged that he had made no record of the call and, indeed, that there was "[n]othing in writing" at all reflecting that the call had occurred. *Id*. at 42. When asked how he suddenly remembered that the telephone call had occurred on October 30th, when he could not remember the relevant date when asked at the November 14, 2019 initial pretrial conference (only two weeks after the events in question), Mr. Liebowitz responded that certain emails had jogged his memory — namely, emails that had been attached to Mr. Newberg's initial declaration in support of the sanctions motion. *Id*. at 47-50. But Mr. Newberg's initial declaration had been filed before the November 14th conference, and Mr. Liebowitz had actually responded to it in writing. (When pressed on that point, Mr. Liebowitz testified: "I often forget things." *Id*. at 50-52.)

15

More troubling, Mr. Liebowitz's account is not supported by the email trail. At 6:34 p.m. on October 30, 2019, Mr. Newberg emailed a proposed settlement agreement to the Mediator, and stated that unless Mr. Usherson "sign[ed] the agreement" that night, "we will see Mr. Liebowitz and Mr. Usherson tomorrow . . . at the mediation." ECF No. 36 at 24. At 8:15 p.m., the Mediator replied: "Talked to Richard and he has been tied up. He will review tonight and get back to us in the morning. Hopefully we can settle this before need [*sic*] to go to in person mediation." ECF No. 16, at 32. Mr. Newberg responded: "I'm headed to the train station well before 6:00 am. And to be candid, I would have assumed Mr[.] Usherson either flew to NY tonight or is likewise on a very early plane." *Id*. The Mediator said simply, "I understand." *Id*. (email sent at 10:03 p.m.). In addition, at 4:12 a.m. on October 31, 2019, Mr. Liebowitz sent Mr. Newberg an email stating: "Attached please find revisions to the agreement which can be discussed at the mediation." Hearing Tr. 67; *see* ECF No. 16, at 33. Mr. Liebowitz did not mention that he and Mr. Usherson did not plan to attend, let alone that they had the Mediator's permission not to attend. Hearing Tr. 67. At no point, in fact, did Mr. Liebowitz notify opposing counsel that he and Mr. Usherson would not be attending.

During Mr. Liebowitz's testimony at the hearing, the Court asked him what he would have done had the Mediator denied his alleged requests on the night of October 30th. Hearing Tr. 28. Mr. Liebowitz claimed that he and Mr. Usherson would have attended the mediation the next day in person. *Id*. at 28-32. But on the night of October 30th, Mr. Liebowitz was in Los Angeles hosting a "networking event" for photographers, and Mr. Usherson was at home in Georgia. *Id*. at 30. Mr. Liebowitz never booked any flights or checked when the last flight to New York from either location was. *Id*. at 28, 32, 46, 63. Nevertheless, he claimed that he had

been prepared to book flights and fly overnight. *Id*. When pressed about whether he had communicated this alleged plan to Mr. Usherson, Mr. Liebowitz equivocated: "Well, if he — if he — if he didn't have to appear in person, then — then I would have just called him that day and know that he's always around." *Id*. at 40-41. It is clear, therefore, that Mr. Liebowitz did not advise Mr. Usherson that he might need to jump on a plane at a moment's notice and appear in New York. It follows that Mr. Liebowitz had no way of knowing whether Mr. Usherson could have complied if asked to do so.

Notably, Mr. Liebowitz's testimony was in tension, if not direct conflict, with the representations of his own associate, Mr. Freeman. For example, Mr. Liebowitz claimed that he had told Mr. Freeman on October 30th that the Mediator had approved Mr. Liebowitz's requests. Hearing Tr. 34-35, 38. But at the initial pretrial conference, Mr. Freeman advised the Court that he had not known what "clearances" were given. Initial Conf. Tr. 9. When confronted with this discrepancy, Mr. Liebowitz responded: "[P]eople forget things." Hearing Tr. 38. Mr. Liebowitz also claimed that he had spoken with Mr. Freeman about the case on "numerous occasions" before October 30th. *Id*. at 32. But, as noted, Mr. Freeman repeatedly confirmed that he did not even know about the "existence" of the case before October 30th — a representation that he had reiterated in his sworn declaration, ECF No. 23, at 1, which Mr. Liebowitz himself had filed and even cited in Mr. Usherson's opposition brief. *See* ECF No. 21, at 4, 6. (Despite that, Mr. Liebowitz claimed that he had not read Mr. Freeman's declaration before filing the brief. Hearing Tr. 42-44.)

Finally, to the extent relevant here, Mr. Liebowitz also took the position that he was never required to attend the mediation, as it was Mr. Freeman who was "the lawyer who will be

primarily responsible for handling the trial of this matter." Hearing Tr. 19; *see* Mediation Rule 9(c) (requiring that "[e]ach represented party must be accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter"). But Mr. Liebowitz acknowledged that Mr. Freeman had not even entered an appearance in this case and that he had never advised the Mediator or Mr. Newberg that Mr. Freeman was principal trial counsel. Hearing Tr. 17-18, 29. Moreover, he was forced to admit that the Court's Order scheduling the initial pretrial conference had required "principal trial counsel" to attend "all pretrial conferences" and that he — not Mr. Freeman — had appeared on Mr. Usherson's behalf at the initial pretrial conference. Hearing Tr. 17-20. Similarly, Mr. Liebowitz claimed that Mr. Usherson was also never required to attend the mediation because, in Mr. Liebowitz's view, the Court's Order requiring "in-person" mediation referred only to the attorneys, "[n]ot parties." *Id*. at 59-60. When asked why, then, he had bothered to confirm that he and Mr. Usherson could be in New York on October 31st, and later asked the Mediator to excuse his and Mr. Usherson's attendance, Mr. Liebowitz responded that he "wanted to double — double — you know, just cover myself." *Id*. at 35-36, 62.

Mr. Newberg and the Mediator then testified. Mr. Newberg recalled the Mediator saying at the mediation that he had been "notified" that Mr. Liebowitz would not be coming and would be sending an associate instead. Hearing Tr. 87. He testified that he was not "100 percent sure[]" whether the Mediator said "I did not grant permission." Hearing Tr. 87. But Mr. Newberg did recall the Mediator saying that Mr. Usherson was "expected . . . to be there." *Id*. at 85. Finally, the Mediator testified that he could not recall whether Mr. Liebowitz had mentioned that Mr. Freeman would be appearing instead of Mr. Liebowitz. *Id*. at 99-100. The Mediator

acknowledged that, at some point prior to the mediation, he had realized that Mr. Liebowitz was

in Los Angeles and likely would not be attending the mediation in person. *Id*. at 97-98. The

Mediator was clear, however, that he did not give permission for Mr. Usherson to appear by

phone. *Id*. at 107-08. The Mediator spoke with Mr. Liebowitz several times on October 30,

2019, the last of which was right before the Mediator emailed Mr. Newberg at 8:15 p.m. *Id*. at

96, 102. The Mediator stated that, during these conversations, Mr. Liebowitz never even

mentioned the possibility of Mr. Usherson's appearing by telephone. *Id*. at 100 ("Mr.

Usherson[] . . . was just not part of the conversation."), 117. The first time the Mediator learned

that Mr. Usherson would not be coming was "[w]hen the mediation started." *Id*. at 103, 105.

**F. Bandshell Discovers That the Photograph Was Registered After This Case Was Filed**

At the close of the hearing, the Court heard brief oral argument. Among other things, Mr.

Newberg clarified that, in light of stipulation of voluntary dismissal stating that "each side" was

"to bear its own costs and attorney's fees," ECF No. 45, neither he nor Bandshell was seeking to

recover attorney's fees or costs. Hearing Tr. 130. Mr. Newberg explained that if fees and costs

were used as a measure of the sanctions to be imposed, Mr. Liebowitz should be directed to pay

the Court or "some sort of legal aid *pro bono* fund." *Id*.

Mr. Newberg then returned to the question of whether the Photograph had been registered

before Mr. Liebowitz filed the Complaint as required by Section 411(a) of the Copyright Act.

Mr. Newberg revealed that he had just received the Copyright Office's deposit files for the 046

Registration and confirmed that the Photograph was *not* in fact registered under that number.

Hearing Tr. 127. In response, Mr. Freeman admitted that it is the regular practice of the

Liebowitz Law Firm to file copyright infringement cases without verifying that the works in

question are properly registered, because of the "additional expense." *Id.* at 139. Mr. Freeman stated that "[t]he client will say to us, 'This photograph is on deposit with this registration.' And we take them for their word." *Id.* at 141. Mr. Freeman stated that, in this case, Mr. Usherson had "represented to us that he" had registered the Photograph. *Id.* at 140. Mr. Freeman further stated that, prior to filing the Complaint, the firm had checked on the Copyright Office's website "that Mr. Usherson was the copyright claimant in that particular case." *Id.*

In light of these revelations, the Court ordered both sides to file letter-briefs addressing the issue and ordered Mr. Newberg to serve a copy of the deposit files on Plaintiff. ECF No. 52. In his letter, Mr. Liebowitz admitted that "Paragraph 9 of the Complaint" was "inaccurate" because the Photograph was not, in fact, registered "as part of the 046 Registration." ECF No. 57, at 1. Mr. Liebowitz disclosed that his firm had registered the Photograph under registration number VAu 1-373-272 (the "272 Registration"), but not until August 22, 2019 — more than a month after the Complaint in this case was filed. *Id.* Mr. Liebowitz attributed the false statement in the Complaint to "clerical error," noted that "administrative mistakes or clerical errors do happen in the copyright registration process," and insisted that, but for dismissal of the case, Mr. Usherson could have cured the problem by amending the Complaint. *Id.* at 1, 3. In Bandshell's response, Mr. Newberg reminded the Court that, at the initial pretrial conference, Mr. Liebowitz had denied any knowledge of "other registrations or other photographs." ECF No. 58, at 3. Mr. Newberg argued that Mr. Liebowitz's new explanation thus "defie[d] belief." *Id.* at 1. Mr. Newberg also pointed out that Mr. Liebowitz had incorrectly asserted that "the failure to obtain a registration prior to filing suit provides grounds to amend the complaint," ECF No. 57, at 1, citing this Court's decision in *Malibu Media* holding that premature filing

necessitates dismissal. ECF No. 58, at 2.

Upon review of these submissions, the Court ordered Mr. Liebowitz, Mr. Freeman, and Mr. Usherson himself to submit declarations addressing the registration of the Photograph and the alleged "administrative mistake." ECF No. 59. In his declaration, Mr. Freeman admitted that the Photograph was registered by the Liebowitz Law Firm after the Complaint was filed but claimed that he had "no personal knowledge of this administrative mistake until after the January 8, 2020 hearing." ECF No. 64, at 6. Mr. Freeman explained his representations at the close of the January 8th hearing by saying (not altogether convincingly) that he had been speaking based on his "*general* knowledge of [the Liebowitz Law Firm's] custom and practices." *Id*. at 4-5 (emphasis in original). Mr. Usherson averred that he had "identifi[ed] the 046 Registration" when he "authorized Mr. Liebowitz to file a copyright infringement action." ECF No. 62, at 4. But Mr. Usherson also stated that, before the Complaint was filed, he had provided to the Liebowitz Law Firm a CD-ROM containing all of the photographs in the 046 Registration. *Id*. at 3. The Photograph was not among them. Then, "[s]ometime after" the lawsuit was filed, Mr. Usherson provided the firm with a CD-ROM containing thirty additional photographs, including the Photograph, which the firm registered in the 272 Registration. *Id*. at 4.

Finally, Mr. Liebowitz admitted that he had conducted no investigation into whether the Photograph was properly registered before filing the Complaint, even though he and his firm "had the ability as of June 2019 to double-check whether the Photograph was part of [the] images that were included on a CD-Rom that Mr. Usherson had previously sent." ECF No. 63, at 3. Instead, Mr. Liebowitz relied solely on an entry in the firm's internal case-tracking system, which noted that the Photograph was "associated with the 046 Registration." *Id*. at 2-3. This

entry was made by "a member of [the firm's] administrative staff, Zachary Cuff." *Id*. Mr. Liebowitz also stated that he had no role in filing the 272 Registration, which was performed by his firm's "internal staff at the request of Mr. Cuff." *Id*. at 4. Mr. Liebowitz claimed that he did not realize the Photograph was not properly registered — which he described as a "technical pleading deficiency" — until "subsequent to the January 8, 2020 hearing." *Id*. at 4-5.

## LEGAL STANDARDS

"Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent powers." *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997). Three forms of sanctions are particularly relevant here. First, Rule 16(f) of the Federal Rules of Civil Procedure authorizes sanctions for, among other things, the "fail[ure] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C); *see, e.g.*, *Rice*, 2019 WL 3000808, at *3 (imposing sanctions on Mr. Liebowitz for violations of Rule 16(f)). "In deciding whether a sanction is merited [under Rule 16(f)], the court need not find that the party acted in bad faith." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (internal quotation marks omitted). Instead, the Court need only find that there is clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial order. *See id.* ("The fact that a pretrial order was violated is sufficient to allow some sanction." (internal quotation marks omitted)).

Second, "district courts have the inherent power" to sanction a party "for bad faith conduct violating the court's orders even if procedural rules exist which sanction the same conduct." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (internal quotation marks omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)

22

("[N]either is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules."); *Rice*, 2019 WL 3000808, at *3-4 (imposing sanctions on Mr. Liebowitz pursuant to the Court's inherent authority). A court may impose sanctions under its inherent authority if "it finds, by clear and convincing evidence, that the party or attorney knowingly submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly." *Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*, No. 11-CV-4383 (CM) (DF), 2015 WL 4389893, at *17 (S.D.N.Y. July 10, 2015); *see also Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (conditioning sanctions based on a court's inherent authority on "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes"). Under this "inherent power a court may assess attorney's fees as a sanction." *Chambers*, 501 U.S. at 45. To warrant an award of attorney's fees, the Court must find that the wrongdoer acted in bad faith or that he willfully disobeyed the Court's orders. *See id.* at 50.

Finally, under 28 U.S.C. § 1927, a district court may award attorney's fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." The standard for sanctions under Section 1927 is effectively the same as the inherent-authority standard: A court must find that "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted); *see United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under [Section

23

1927].").  Indeed, as the Second Circuit has explained, "[i]n practice, the only meaningful

difference between an award made under § 1927 and one made pursuant to the court's inherent

power is . . . that awards under § 1927 are made only against attorneys . . . while an award made

under the court's inherent power may be made against an attorney, a party, or both."  *Enmon*,

675 F.3d at 144 (internal quotation marks omitted).  To impose sanctions under Section 1927, a

court must make factual findings with a "high degree of specificity," *Dow Chem. Pac. Ltd. v.*

*Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) (internal quotation marks omitted), but it

may infer bad faith when counsel's "actions are so completely without merit as to require the

conclusion that they must have been undertaken for some improper purpose," *Schlaifer Nance &*

*Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (internal quotation marks omitted).[2]

Sanctions on any of these grounds may be imposed by the Court *sua sponte*.  *See* Fed. R.

Civ. P. 16(f)(1) (noting that the Court may impose sanctions "[o]n motion or on its own");

*Chambers*, 501 U.S. at 43-44 (inherent authority); *Gallop v. Cheney*, 642 F.3d 364, 370 (2d Cir.

2011) (Section 1927).  Thus, the Court may sanction misconduct that occurred during this case

without regard for what Bandshell argued in its sanctions motion and notwithstanding the fact

---

[2]        Rule 11 of the Federal Rules of Civil Procedure is arguably another source of authority
for sanctions in this case.  *See, e.g.*, *S.E.C. v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013) ("Under Rule
11(c)(3) . . . sanctions are appropriate when an individual has made a false statement to the court
and has done so in bad faith.").  Under Rule 11, however, "[t]he court must not impose a
monetary sanction . . . on its own, unless it issued the show-cause order under Rule 11(c)(3)
before voluntary dismissal or settlement of the claims made by or against the party that is, or
whose attorneys are, to be sanctioned."  Fed. R. Civ. P. 11(c)(5)(B).  That limitation arguably
does not apply here, as the voluntary dismissal was filed and so-ordered after Bandshell had filed
a motion for sanctions and the Court had scheduled an evidentiary hearing to determine if Mr.
Liebowitz's representations to the Court were truthful.  But the Court need not decide whether
Rule 11 would be a valid basis for sanctions because Rule 11(c)(5)(B)'s limitation does not
apply to the Court's authority to impose sanctions under its inherent authority, Section 1927, or
Rule 16(f), *see Rice*, 2019 WL 3000808, at *5, and those bases suffice.

that the parties entered a stipulation of dismissal in which Bandshell agreed to bear its own fees and costs. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990); *Steeger v. JMS Cleaning Servs., LLC*, No. 17-CV-8013 (DLC), 2018 WL 1363497, at *3 (S.D.N.Y. Mar. 15, 2018). Further, the Court may impose sanctions pursuant to Rule 16, its inherent authority, and Section 1927 on the lawyer engaging in misconduct, the lawyer's firm, or both. *See, e.g., Rice*, 2019 WL 3000808, at *2; *see also Enmon*, 675 F.3d at 148 (affirming sanctions imposed pursuant to Section 1927 and the district court's inherent authority on both an attorney and his firm where the attorney "was a founding, named partner of a firm that . . . had ten or fifteen lawyers during the relevant time period" and "[t]hroughout the litigation, [the attorney's] actions were indistinguishable from those of [the firm]"). Pursuant to its inherent authority, the Court may also impose sanctions on a party. *See, e.g., Enmon*, 675 F.3d at 144-45. Ultimately, the decision whether to impose sanctions is left to the Court's discretion. *See, e.g., Macolor v. Libiran*, No. 14-CV-4555 (JMF), 2015 WL 337561, at *2 (S.D.N.Y. Jan. 23, 2015).

## DISCUSSION

Applying the foregoing standards here, the Court concludes that a range of substantial monetary and non-monetary sanctions against Mr. Liebowitz and his firm, including referral of Mr. Liebowitz to the Grievance Committee, are amply justified. Sanctions are appropriate for (1) Mr. Liebowitz's repeated violations of the Court's Orders; (2) Mr. Liebowitz's repeated lies to the Court, including under oath, about whether the Mediator granted Mr. Usherson permission to participate in the mediation by telephone; and (3) the false allegation in the Complaint regarding registration of the Photograph and the failure to reasonably investigate the issue, both prior to filing suit and when put on notice about the issue during the litigation.

The Court will address each basis for sanctions in turn.

## A. Mr. Liebowitz's Repeated Violations of the Court's Orders

The Court starts with the lowest hanging fruit: Mr. Liebowitz's repeated violations of the Court's Orders. Indeed, it is essentially undisputed, and for good reason, that Mr. Liebowitz violated at least six of the Court's Orders:

1. On July 15, 2019, the Court ordered Mr. Usherson to "file proof of service no more than three days after service has been effected." ECF No. 6. Bandshell was served on September 5, 2019, but Mr. Liebowitz did not file proof of service until September 21, 2019, thirteen days after the Court's deadline. ECF No. 7.

2. On July 15, 2019, the Court also ordered Mr. Usherson to produce limited discovery to Bandshell "by the earlier of 14 days after service of process or three business days in advance of any mediation session." ECF No. 6. Mr. Liebowitz failed to produce these materials (or to notify Mr. Newberg that none of the required discovery existed) by the September 19, 2019 deadline. Only when Mr. Newberg prodded him on September 20, 2019, did Mr. Liebowitz respond: "My client is still looking but as of now doesn't look like any licensing for this photo." ECF No. 16, at 12.

3. On July 15, 2019, the Court scheduled an initial pretrial conference and ordered that "all pretrial conferences must be attended by the attorney who will serve as principal trial counsel." ECF No. 5, at 1. In addition, the Mediation Program's rules (which were incorporated by reference into the Court's Order at ECF No. 6), required that "the lawyer who will be primarily responsible for handling the trial of the matter" attend the mediation. Mediation Rule 9(c). Mr. Liebowitz attended the initial conference but did not attend the mediation on October 31, 2019. At the evidentiary hearing, Mr. Liebowitz was evasive about whether he or Mr. Freeman was trial counsel (even though Mr. Freeman never even entered a notice of appearance), but either way Mr. Liebowtiz violated an Order of the Court: If he was principal trial counsel, he violated the Court's Order by failing to appear at the mediation; if he was not principal trial counsel, then he violated the Court's Order by appearing at the initial conference.

4. On July 15, 2019, the Court ordered that Mr. Liebowitz and Mr. Usherson participate in mediation "**no later than two weeks _before_** the initial pretrial conference," initially scheduled for October 10, 2019. ECF No. 5, at 1 (emphasis in original). Neither did, and Mr. Liebowitz did not request an extension of the mediation deadline at least forty-eight hours in advance, as required by the Court's Individual Rules. Instead, on October 4, 2019, Mr. Liebowitz filed a letter attempting (at best, disingenuously) to pin blame onto the Mediation Office for the missed deadline and requesting permission to conduct the mediation by telephone. _See_ ECF No. 12.

26

5.  On October 7, 2019, the Court extended the deadline to mediate, and ordered that "[t]he parties shall conduct the in-person mediation no later than October 31, 2019." ECF No. 13. Further, as discussed below, the Mediation Office's procedures required that Mr. Usherson appear at the mediation in person. Mr. Liebowitz agreed that he and Mr. Usherson would participate in a mediation session on October 31, 2019, ECF No. 16, at 27, but neither showed up. As discussed below, Mr. Liebowitz gave no notice to opposing counsel, the Mediator, or the Court that Mr. Usherson would not be attending in person.

6.  On November 15, 2019, the Court ordered both parties to address in their sanctions briefing "whether the Court should hold an evidentiary hearing and, if so, what witnesses should be called and how it should be conducted." ECF No. 20, at 6. Mr. Liebowitz failed to address those issues in his brief. ECF No. 21.

This litany of violations, standing alone, justifies sanctions under Rule 16(f). *See, e.g.*, *Polaris Images Corp. v. CBS Interactive, Inc.*, No. 19-CV-3670 (VEC), 2019 WL 5067167, at *2-3 (S.D.N.Y. Oct. 9, 2019) (sanctioning Mr. Liebowitz for failing to timely file proof of service and produce pre-mediation discovery, and rejecting Mr. Liebowitz's claim of "administrative oversight" because "the undersigned is unconvinced that they are indeed good faith oversights").

The Court need not make a finding of bad faith to justify sanctions under Rule 16(f), but there is no doubt that Mr. Liebowitz's violations of these court Orders were willful. First, the Orders "were explicit and," with one possible exception, "there is no suggestion that [Mr. Liebowitz] misread or misunderstood them." *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 455 (S.D.N.Y. 2011). The one possible exception is the failure of Mr. Liebowitz and Mr. Usherson to attend the mediation; as to those violations, Mr. Liebowitz proffers several explanations, but as discussed below, Mr. Liebowitz's shifting explanations are patently incredible — evidence of bad faith in itself. Second, there is no "good-faith explanation" for Mr. Liebowitz's failure to comply, particularly in light of the findings set forth below. *See S. New England Tel. Co.*, 624 F.3d at 148. And finally, Mr. Liebowitz's "failure to comply was 'not isolated but rather [part of] a pattern' of non-compliance in this case dating to" even before "the

27

very first conference." *Yu v. Diguojiaoyu, Inc.*, No. 18-CV-7303 (JMF), 2019 WL 6174204, at

*5 (S.D.N.Y. Nov. 20, 2019) (quoting *S. New England Tel.*, 624 F.3d at 148).

In fact, Mr. Liebowitz's violations are part of an even longer pattern of violations in

scores of cases. Despite many judicial warnings, Mr. Liebowitz has engaged in similar

misconduct for years, every time making the same excuses for his behavior. *See, e.g., Chevrestt*

*v. Barstool Sports, Inc.*, No. 20-CV-1949 (VEC), 2020 WL 2301210, at *2 (S.D.N.Y. May 8,

2020) (sanctioning Mr. Liebowitz under Rule 16(f) and finding that his attempt to plead

"administrative oversight" was "disingenuous, distasteful, unpersuasive, and likely perjurious");

*Polaris Images Corp.*, 2019 WL 5067167, at *3 (imposing sanctions under Rule 16(f) and noting

that "given the frequency with which Mr. Liebowitz commits 'administrative errors,' the

undersigned is unconvinced that they are indeed good faith oversights"); *Steeger*, 2018 WL

1363497, at *2-3) (imposing monetary sanctions and a requirement that Mr. Liebowitz complete

"four CLE credit hours in ethics and professionalism" in an effort to address Mr. Liebowitz's

"pattern of omissions and misrepresentations"). Indeed, he has been found to have acted in bad

faith several times this year, alone. *See, e.g., Ward*, 2020 WL 2219070, at *3 (imposing $20,000

in sanctions under the Court's inherent authority and noting that "Liebowitz's conduct in this

case has been irresponsible, unreasonable, and detrimental to the fair administration of justice");

*Wisser v. Vox Media, Inc.*, No. 19-CV-1445 (LGS), 2020 WL 1547381, at *6 (S.D.N.Y. Apr. 1,

2020) (finding bad faith and imposing sanctions for, among other things, affixing his client's

signature to interrogatory responses without authorization and without the client having even

read the responses); *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618 (ALC), 2020 WL

468904, at *4, *7 (S.D.N.Y. Jan. 29, 2020) (granting attorney's fees against Mr. Liebowitz's

client totaling over $100,000, $10,000 of which Mr. Liebowitz and his firm were responsible for

as sanctions, and finding that Mr. Liebowitz's "conduct — of failing to investigate the

evidentiary basis for a Complaint, of stonewalling discovery, of misleading the Court, and of

making meritless arguments — undoubtedly demonstrates bad faith").  As one court, after

surveying the ever-growing body of cases sanctioning Mr. Liebowitz, put it: Mr. Liebowitz's and

his firm's "inability to follow specific orders . . . is part of a pattern . . . .  He and his firm are

demonstrably incapable of complying with the rules of the many courts where Mr. Liebowitz is

filing hundreds of lawsuits." *Mondragon*, 2020 WL 2395641, at *13; *see id*. at *3 (finding that

Mr. Liebowitz "has demonstrated, both in this case and in many other copyright cases in this and

other districts, a disregard for basic federal courtroom rules, procedures, and practices").

## B.  Mr. Liebowitz's Lies to the Court

That said, Mr. Liebowitz's repeated and willful violations of the Court's Orders pale in

comparison to his more serious misconduct in this case: his lies, including his lies under oath.

Mr. Liebowitz repeatedly represented to the Court that he had received permission before the

October 31, 2019 mediation for Mr. Usherson to appear by telephone at the mediation.  He made

these claims in open court (despite a warning from the Court to be "very, very, very careful"

about his representations in light of the contempt finding by Judge Seibel, *see* Initial Conf. Tr.

7); in multiple filings with the Court, including at least one declaration sworn under penalty of

perjury; and in his testimony, also under oath, at the evidentiary hearing.  In fact, to this day, Mr.

Liebowitz maintains that "such permissions were in fact granted" by the Mediator.  ECF No. 54,

at 3.  But based on a careful review of the record, including an evaluation of the witnesses'

demeanor at the January 8, 2020 hearing, the Court finds by clear and convincing evidence that

these representations were false and made in bad faith. *See S.E.C. v. Smith*, 798 F. Supp. 2d 412, 424 (N.D.N.Y. 2011) ("[T]here must exist clear and convincing evidence that an individual's conduct was not merely negligent but was undertaken with subjective bad faith.").[3]

First and most obviously, Mr. Liebowitz's claims are contradicted by the Mediator, who testified unequivocally at the hearing that Mr. Liebowitz never mentioned the possibility that Mr. Usherson would not attend the mediation in person. Hearing Tr. 100-01. The Court finds this testimony credible, based not only its observations of the Mediator's demeanor at the hearing and his lack of any stake in this matter, but also on the fact that it is corroborated by Mr. Newberg's testimony and documentary evidence. Most notably, the Mediator's email exchange with Mr. Newberg shortly after the Mediator's final phone call with Mr. Liebowitz on October 30th makes plain that the Mediator had no clue that Mr. Usherson (and Mr. Liebowitz, for that matter) would not be attending the mediation in person the next day. ECF No. 16, at 32. For instance, at 6:34 p.m. on October 30, 2019, Mr. Newberg stated in an email his expectation that "we will see Mr. Liebowitz and Mr. Usherson tomorrow . . . at the mediation," ECF No. 36, at 24, and the Mediator replied, "Talked to Richard and he has been tied up. He will review tonight and get back to us in the morning. Hopefully we can settle this before need to go to in person

---

[3]     The Court is inclined to believe — and if the applicable standard were a preponderance of the evidence would find — that Mr. Liebowitz also lied about getting advance permission from the Mediator for Mr. Freeman to appear in his stead. But the record is admittedly more muddled on that front. For instance, Mr. Newberg stated in his second declaration that the Mediator had indicated that Mr. Liebowitz had informed the Mediator "that Mr. Liebowitz was out of town and that Mr. Liebowitz's associate would be at the mediation instead." ECF No. 36, at 4. Further, at the hearing, the Mediator testified that he could not remember whether Mr. Liebowitz had said "anything one way or another about whether he would be appearing at the mediation on the 31st." Hearing Tr. 99. The Mediator indicated that he somehow "became aware" that Mr. Liebowitz was in Los Angeles and could not recall whether Mr. Liebowitz "may have told me." Hearing Tr. 98. As a result, the Court is not prepared to find by clear-and-convincing evidence that Mr. Liebowitz's representations on that score were made in bad faith.

mediation," ECF No. 16, at 32.  Later that night, Mr. Newberg reiterated his expectation of an in-person mediation, stating, "I would have assumed Mr. Usherson either flew to NY tonight or is likewise on a very early plane."  *Id*.  In response, the Mediator said simply: "I understand."  *Id*. At no point in these emails did the Mediator reveal any awareness that either Mr. Usheron or Mr. Liebowitz would not be attending in person the next day — much less that he had given them both permission not to attend *that very night*, as Mr. Liebowitz claims.

That would be enough to conclude that Mr. Liebowitz lied under oath.  Additionally, however, the Court finds, based in part on its assessment of his demeanor at the hearing and in part on the content of the testimony, that Mr. Liebowitz's testimony, on its own terms, was unworthy of belief.  To start, several portions of Mr. Liebowitz's testimony were patently incredible.  Two examples will suffice.  First, it defies credibility to claim, as Mr. Liebowitz did, that, with him in Los Angeles for a networking event and Mr. Usherson at home in Georgia, he waited until approximately 8:00 p.m. on the night before the mediation (which was already scheduled to take place on the last date permitted by the Court — after the Court had admonished Mr. Liebowitz for failing to mediate by its first deadline) to ask the Mediator for permission to send an associate on his behalf and to allow Mr. Usherson to participate by telephone.  When pressed, Mr. Liebowitz claimed that he would have flown to New York that night and arranged for Mr. Usherson to do the same had the Mediator not granted permission. But putting aside the inherent incredibility of that claim, by Mr. Liebowitz's own admission, he had not booked or even researched flights, and there is no evidence that he ever told Mr. Usherson about the potential need to travel on short notice.  Put simply, Mr. Liebowitz's story defies belief.

31

A second example: On November 14, 2019, only two weeks after the relevant events had occurred, Mr. Liebowitz was unable to recall when he had allegedly obtained permission from the Mediator for Mr. Usherson to appear by telephone. Initial Conf. Tr. 7 ("I don't know the exact date, but it was before the mediation."). Yet almost two months later, he was suddenly able to remember that the Mediator had granted him permission by telephone between 7:30 and 8:00 p.m. on October 30th. Hearing Tr. 22. When confronted with the discrepancy, Mr. Liebowitz claimed that his memory had been refreshed by the documents attached to Mr. Newberg's initial declaration. *Id*. at 50-51. But that declaration was filed before the November 14th initial pretrial conference, and Mr. Liebowitz had even responded to it before the conference. *See* ECF No. 19.

Next, Mr. Liebowitz's testimony was also incredible because, in contrast to the Mediator's and Mr. Newberg's testimony, there is absolutely no evidence to corroborate it. He made no reference to the Mediator granting permission for Mr. Usherson to appear by telephone in any email; in fact, he made no record of it at all. Hearing Tr. 39-40 ("No, no record. I just had a phone call with the Mediator and spoke with Mr. Freeman. And that's — that's what happened."). Nor do his own associates — Mr. Freeman and his sister, Ms. Liebowitz — back up his account. Their declarations say nothing about the Mediator granting consent. *See* ECF No. 23, ¶¶ 4-5; ECF No. 24. And orally, Mr. Freeman explicitly contradicted Mr. Liebowitz's testimony on the point. While Mr. Liebowitz testified at the hearing that he told Mr. Freeman on October 30th that the Mediator had approved his requests, Mr. Freeman reported at the November 14th initial pretrial conference — again, only two weeks after the relevant events — that he had "no knowledge one way or the other as to what clearances were made in terms of

telephonic appearances." Initial Conf. Tr. 9. Nor was that the only inconsistency between Mr. Liebowitz's testimony and the representations of his own employee. Mr. Liebowitz testified under oath that he had discussed the case with Mr. Freeman on "numerous occasions" on and before October 30th. Hearing Tr. 32. But Mr. Freeman consistently maintained — at the November 14th initial pretrial conference, in his own sworn declaration, and at the conclusion of the hearing — that he did not even know the case existed until the evening of October 30th. Initial Conf. Tr. 9; ECF No. 23, ¶ 4; Hearing Tr. 138.

Third, Mr. Liebowitz's testimony is internally inconsistent, a function of his explanations shifting to suit the moment. Again, two examples will suffice. First, Mr. Liebowitz's initial story was unambiguous: He asked for, and received, the Mediator's consent for Mr. Usherson to appear telephonically. At various times, Mr. Liebowitz acknowledged that the Mediation Rules required the presence of a party, unless the mediator granted consent for a telephonic appearance. ECF No. 19, at 1; Initial Conf. Tr. 6-7. But later, perhaps to hedge his bets, Mr. Liebowitz took a different tack: that neither the Court's Orders nor the Mediation Rules actually required Mr. Usherson to appear in person in the first place. ECF No. 21, at 3-4; ECF No. 22, ¶¶ 7-9, 12; Hearing Tr. 59-60; *see also id*. at 135-36. It strains credulity to conclude that Mr. Liebowitz actually believed that assertion, and not only because it was made so belatedly. For one thing, it is demonstrably false, as the Mediation Rules explicitly state that "[e]ach *party* must attend mediation," unless, if certain requirements are met, the mediator grants consent to participate by telephone. Mediation Rules 9(a), (f); *see also* ECF No. 13 (denying Mr. Liebowitz's application to conduct the mediation by telephone and mandating an "in-person mediation").[4] For another, it

---

[4]      Read in context, the Mediation Office procedures make plain that the term "party" does not refer to counsel and refers here to Mr. Usherson. Further, there is no doubt that Mr.

is belied by Mr. Liebowitz's own objection in another case to the telephonic appearance of an
opposing party located in Israel, on the ground that "the rules of the mediation office requires
[*sic*]" parties to appear in person. *Sadowski*, No. 18-CV-9193, ECF No. 21; *see* Hearing Tr. 11-
16. And finally, it makes no sense in light of Mr. Liebowitz's first and principal story: that he
explicitly asked for, and received, the Mediator's consent for Mr. Usherson to appear
telephonically. After all, if he believed in good faith that Mr. Usherson did not have to appear in
person at all, why ask for permission to appear telephonically the night before the mediation and
risk the possibility that, with Mr. Usherson in Georgia, the Mediator might say no? The answer
is that, contrary to his testimony, he never asked — *and* he knew full well that Mr. Usherson was
required to appear in person. He just thought he could get away with it, either because the
Mediator would ratify the decision or because he thought the case would settle and no one would
care.

The second example of Mr. Liebowitz's shifting and internally inconsistent explanations
is his "custom and practice" defense: that the Mediator, who had mediated five of his other cases,
had a "custom and practice" of allowing his clients to appear by telephone. Conspicuously, Mr.
Liebowitz did not even mention this defense in his first submissions and arguments to the Court
— that is, in the two letters he filed between Bandshell's sanctions motion and the initial pretrial
conference; at the initial pretrial conference; or in his formal opposition to the sanctions motion
and his supporting declaration filed thereafter. The "custom and practice" defense appeared for
the first time in Mr. Liebowitz's December 16th letter — a belatedness underscored by the fact

---

Liebowitz was bound by the Mediation Rules. The Court's initial mediation order provided that
Local Rule 83.9 "shall govern," ECF No. 6, and Local Rule 83.9 provides, in relevant part, that
the mediation program "shall be governed by" the Mediation Rules.

that Mr. Freeman had to make an application at the outset of the hearing to expand the scope of Mr. Liebowitz's direct testimony to include it. Yet by the hearing's end, it was arguably Mr. Liebowitz's principal defense; indeed, he and Mr. Freeman uttered the words "custom and practice" or variations thereof at least fourteen times during the hearing. Once again, however, the defense is an odd fit given Mr. Liebowitz's initial and principal story: that he requested and obtained the Mediator's explicit consent. The defense might have been compelling if Mr. Liebowitz's claim was that he had *assumed* the Mediator's consent. But the Mediator's alleged custom and practice do not shed any light on whether, as Mr. Liebowitz actually claimed, he affirmatively consented. Moreover, once again, if Mr. Liebowitz assumed from his past dealings with the Mediator that he already had the Mediator's permission for Mr. Usherson to appear telephonically, why ask for permission the night before and risk being told that he had to appear? The answer, once again, is that Mr. Liebowitz did not do what he claimed he did. The "custom and practice" defense is nothing more than an after-the-fact justification, conjured up by Mr. Liebowitz when it became apparent that the Court was not inclined to buy into his initial story.

In short, the Court easily finds by clear and convincing evidence that Mr. Liebowitz lied — repeatedly and under oath — by claiming that he sought and obtained the Mediator's consent for Mr. Usherson to participate in the mediation by telephone. Disturbingly, that misconduct is also part of a broader pattern. *See Steeger*, 2018 WL 1363497, at *2 (noting that Mr. Liebowitz has been "plagued" by a "pattern of omissions and misrepresentations"); *see also Sands v. Bauer Media Grp. USA, LLC*, No. 17-CV-9215 (LAK), 2019 WL 6324866, at *2 n.1 (S.D.N.Y. Nov. 26, 2019) ("Nor is this the only occasion on which Mr. Liebowitz has made an untrue statement to a judge of this Court."); *Berger* Tr. 14 ("Mr. Liebowitz has woven himself a very tangled web

of lies."); *id.* ("[T]he whole issue why I question Mr. Liebowitz's fitness to practice is the
dishonesty and the failure to own up to the dishonesty and the doubling and quintupling and
octupling down on the dishonesty."); *Pereira v. 3072541 Can. Inc.*, No. 17-CV-6945 (RA), 2018
WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) ("The Court finds particularly concerning Mr.
Liebowitz's . . . propensity to take unreasonable positions and omit crucial facts — or even to
make outright misrepresentations — in an apparent attempt to increase costs and to extort
unwarranted settlements.").[5]   In fact, Mr. Liebowitz's conduct in this case is strikingly similar to
his conduct in Judge Seibel's case, *Berger*.  In both cases, Mr. Liebowitz's travails began with a
comparatively minor infraction: there, his absence at a pretrial conference, and here, his client's
absence from mediation.  In both cases, rather than admit the truth and accept the consequences,
Mr. Liebowitz concocted a story: there, that his grandfather's death prevented him from
appearing at the conference, and here, that the Mediator had granted consent.  In both cases, he
dug his hole deeper by repeating his lies over and over, including under oath.  *See Berger* Tr. 24-
27 ("[Mr. Liebowitz] knew he was lying; and he then chose to repeat that lie six, eight, ten
times.").  In both cases, he tried — without success — to make his problems go away by

---

[5]      Regrettably, there is reason to believe that Mr. Liebowitz's pattern of lying continued
unabated even after this Court's January evidentiary hearing.  On May 7, 2020, in a hearing
before Magistrate Judge N. Reid Neureiter in the District of Colorado, Mr. Liebowitz testified
under oath that he did not know "whether Judge Seibel had referred the contempt finding against
him to a disciplinary body."  *Mondragon*, 2020 WL 2395641, at *10.  But Mr. Liebowitz was
present in court on November 13, 2019, when Judge Seibel explicitly stated that she had "made a
referral to the grievance committee" of this Court and was "not going to withdraw it."  *Berger*
Tr. 27; *see also id.* at 26 ("[T]his order of contempt, unfortunately, is going to follow Mr.
Liebowitz wherever he goes in the future where he is asked, 'Have you ever been held in
contempt?' because I am not going to vacate it.").  Moreover, as of May 11, 2020, Mr. Liebowitz
had not taken the remedial steps — a continuing legal education course in small law firm
management and mentorship by a lawyer experienced in copyright law — that he had promised
Judge Seibel he would take.  *See Mondragon*, 2020 WL 2395641, at *11.

voluntarily dismissing the case before sanctions were imposed. And in both cases, he ultimately sought to excuse his misconduct by invoking his relative youth and inexperience, his hefty caseload, and poor case management practices. *Berger* Tr. 13; Hearing Tr. 81-82.

Mr. Liebowitz (through Mr. Freeman) wisely concedes that lying to the Court, repeatedly and under oath, is "grounds for sanctions" against him. Hearing Tr. 132; *see, e.g.*, *Macolor*, 2015 WL 1267337, at *4 ("Whatever the appropriate definition [of 'bad faith'], making a false statement with the intent to mislead the Court certainly meets that definition."); *Roberts v. Bennaceur*, 658 F. App'x 611, 615 (2d Cir. 2016) (summary order) (affirming discovery sanctions and noting numerous "misrepresentations" and "inadequate explanations" that demonstrated "bad faith throughout these proceedings"); *see also Enmon*, 675 F.3d at 146 (affirming sanctions based on "ample evidence" of "persistent misrepresentations" made in bad faith). And, as discussed, there is ample evidence in this case that that is precisely what Mr. Liebowitz did. Moreover, while Mr. Liebowitz's failures to obey court orders can arguably be explained (though not justified) by his relative inexperience, heavy caseload, and inadequate case management practices, the same cannot be said for his dishonesty. *See Berger* Tr. 14 ("I am not really super sympathetic to the notion that . . . somebody is young and inexperienced and therefore unaware that it's wrong to lie. We all learn that as children."); *see also Mondragon*, 2020 WL 2395641, at *8 ("While many of Mr. Liebowitz's failings seem to originate with his massive caseload and corresponding inability to follow the rules and schedules of the numerous different courts where he has cases pending, those failings *also* extend to what appears to be a problem with truth-telling." (emphasis added)). The simple fact is that Mr. Liebowitz has a problem: He does not feel constrained by the truth and, when cornered, has no compunction

37

about lying, even under oath.  It follows that sanctions should be, and are, imposed.

**C. Mr. Liebowitz's False Allegation that the Photograph Was Registered Prior to the Suit and His Failure to Reasonably Investigate the Issue**

Finally, the evidence clearly and convincingly shows that Mr. Liebowitz brought — and maintained — this case in bad faith by willfully disregarding the fact that the case was fatally flawed from its inception.  As noted, under Section 411(a) of the Copyright Act, an infringement action may not be filed "until . . . registration of the copyright claim has been made."  17 U.S.C. § 411(a); *see Rudkowski v. MIC Network, Inc*., No. 17-CV-3647 (DAB), 2018 WL 1801307, at *3 (S.D.N.Y. Mar. 23, 2018) (warning Mr. Liebowitz that "possession of a registration certificate is a condition precedent to filing a copyright claim").  Paragraph 9 of the Complaint in this case did allege that the Photograph was registered as part of the 046 Registration.  But in the face of irrefutable evidence to the contrary, Mr. Liebowitz now concedes — as he must — that that allegation was false and that the Photograph was not registered until August 22, 2019, almost a month and a half after the lawsuit was filed.  Mr. Liebowitz has two responses to this extraordinary revelation.  First, he seeks to trivialize it by calling it a "technical pleading deficiency" and suggesting that, but for the voluntary dismissal, he could have cured the problem by amending the Complaint.  ECF No. 63, ¶ 18; ECF No. 57, at 1-3.  Second, throwing his own client and a member of his administrative staff under the proverbial bus, he claims that he did not know about the untimely registration.  ECF No. 63, ¶¶ 4-9.  Neither response is persuasive.

First, as a matter of law, Mr. Liebowitz is wrong in suggesting that he could have cured the Section 411(a) violation through amendment.  Mr. Liebowitz cites as support for that suggestion a twenty-eight-year-old decision from this District.  *See* ECF No. 57, at 2 (citing *Atkins v. Publ'ns Int'l, Ltd.*, No. 91-CV-7427 (KMW), 1992 WL 309581 (S.D.N.Y. 1992)).  But

that case predates *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, in which the

Supreme Court held that a "'registration . . . has been made' within the meaning of 17 U.S.C.

§ 411(a) not when an application for registration is filed, but when the Register has registered a

copyright after examining a properly filed application." 139 S. Ct. 881, 892 (2019). In the wake

of that decision, this Court and others held that where a plaintiff "improperly filed suit before a

copyright was registered," the suit "must be dismissed notwithstanding a plaintiff's post-

registration amendment." *Malibu Media*, 2019 WL 1454317, at *1; *accord Pickett v. Migos*

*Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019); *Xclusive-Lee, Inc. v. Hadid*, No. 19-

CV-520 (PKC) (CLP), 2019 WL 3281013, at *4 (E.D.N.Y. July 18, 2019). Thus, Mr. Liebowitz

is just plain wrong in suggesting that the error was no big deal. Had the error been disclosed

while the lawsuit was pending, Bandshell would have been entitled to dismissal.

      Notably, there is a strong argument that Mr. Liebowitz's suggestion that he could have

cured the defect through amendment is itself made in bad faith. First, it is hard to believe that he

would be unaware of the recent law on that issue. His practice is devoted to copyright

infringement cases; in little more than four years, he has filed approximately 2,500 such cases

and, at the time of the mediation in this case, his firm had more than 400 such cases pending in

federal court. *See* Hearing Tr. 80-81; *Sadowski v. Ziff Davis, LLC*, No. 20-CV-2244 (DLC),

2020 WL 3397714, at *4 (S.D.N.Y. June 19, 2020). But assuming for the sake of argument that

Mr. Liebowitz does not keep up on developments in copyright law (which would be inexcusable,

but is nevertheless all too plausible), he was explicitly put on notice of the fact that an untimely

registration is not curable at the initial pretrial conference in this case, when Mr. Newberg first

raised the issue and noted that dismissal would be required if the Photograph was registered after

the Complaint was filed, citing *Fourth Estate* and this Court's holding in *Malibu Media* that a premature filing "is a non-curable error." Initial Conf. Tr. 17. Making matters even worse, Mr. Liebowitz persisted in pressing the point even after Mr. Newberg, in his post-hearing letter, explicitly noted that the suggestion was "incorrect," citing *Malibu Media* and other precedent. *Compare* ECF No. 58, at 2, *with* ECF No. 63, ¶¶ 18-19. These facts support an inference of bad faith. *See Gollomp v. Spitzer*, 568 F.3d 355, 369 (2d Cir. 2009) (affirming a finding of bad faith where plaintiff's counsel had filed claims "that were clearly barred by the Eleventh Amendment," which "several courts had already instructed plaintiff's counsel"); *In re Gushlak*, No. 11-MC-218 (NGG), 2012 WL 2564523, at *3, *7-8, *10 (E.D.N.Y. July 2, 2012) (concluding that an attorney acted unreasonably and in bad faith where he made "utterly frivolous" legal arguments whose futility would have been revealed by "basic legal research or a moment's thought," and then persisted in making the arguments even after they were refuted).

Mr. Liebowitz's efforts to distance himself from responsibility for the untimely registration and the false allegation in the Complaint, and his attempt to pin blame on either his client or an administrative assistant at his firm, are similarly unavailing. For one thing, the evidence clearly and convincingly shows that Mr. Liebowitz *did* know about the untimely registration, at least as of August 22, 2019, when his firm registered the Photograph under the 272 Registration, if not earlier. Indeed, as Mr. Freeman explained at the January 8th hearing, the firm increasingly files copyright registration applications itself "[s]o we know for sure it's on deposit." Hearing Tr. 139-140. And that is what happened here: Sometime after July 10, 2019, when the Complaint in this case was filed, Mr. Usherson sent the firm a CD-ROM containing all of the photographs that he had not yet registered — including the Photograph — and Mr.

40

Liebowitz's firm proceeded to register them.  ECF No. 62, at 4.  The firm thus had knowledge

that the Photograph had not been registered prior to the filing of the Complaint.  And it is hard to

believe that Mr. Liebowitz, as "lead counsel for Plaintiff" and the "founding member of

Liebowitz Law Firm," ECF No. 63, at 1, was unaware of the fact himself.  It is far more

plausible — indeed likely — that, upon receiving the Photograph from Mr. Usherson, Mr.

Liebowitz realized that it had not yet been registered and sought to quietly take care of the

problem, hoping that Bandshell and the Court would be none the wiser and he would escape

dismissal.

　　　In any event, even if Mr. Liebowitz did not personally know that the Photograph had not

been registered when this case was filed, he certainly should have known — and his lack of

knowledge is attributable to an inexcusable failure to conduct a reasonable investigation before

and during the case.  "An attorney 'is entitled to rely on his or her client's statements as to

factual claims when those statements are objectively reasonable.'  However, the attorney must

still engage in 'an inquiry reasonable under the circumstances.'"  *Chien v. Skystar Bio Pharm.*

*Co.*, 256 F.R.D. 67, 75 (D. Conn. 2009) (Kravitz, J.), *aff'd*, 378 F. App'x 109 (2d Cir. 2010)

(quoting *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir.1995), and Fed. R. Civ. P.

11(b)); *see also Rabin v. Dow Jones & Co., Inc.*, 665 F. App'x 21, 23-24 (2d Cir. 2016)

(summary order) (affirming a finding of bad faith where counsel admitted that two allegations in

his complaint were "overstatement[s]" and that he "failed to conduct a good-faith investigation

into that evidence or to adjust the pleadings" and "sought to suppress the truth by withholding

relevant evidence," until he was finally "confronted with evidence of dishonesty in his

deposition," at which point he "dubiously claimed a bad memory").  Mr. Liebowitz engaged in

no investigation at all despite the fact that he "had the ability . . . to double-check whether the Photograph was part of the images that were included" in the 046 Registration using the CD-ROM that Mr. Usherson had sent the firm. ECF No. 63, at 3. It is no answer to say, as Mr. Liebowitz does, that he relied on his administrative assistant; Mr. Liebowitz is the lawyer who signed the Complaint containing the affirmatively false allegation. Making matters worse, Mr. Liebowitz and his firm received a second CD-ROM, which would have revealed that the Photograph was not among those registered as part of the 046 Registration, and the firm then registered the Photograph itself. And to top it off, at the initial pretrial conference in November 2019, Mr. Newberg specifically addressed the 272 Registration and raised doubts about whether the Photograph had been timely registered — putting Mr. Liebowitz on notice of what turns out to have been a fatal defect in the Complaint. Initial Conf. Tr. 17. Under these circumstances, it was Mr. Liebowitz's obligation to investigate whether the Photograph was properly registered.[6]

Nevertheless, Mr. Liebowitz and his firm conducted no investigation until after the January 8, 2020 hearing and, even then, did so only because the Court ordered them to file a letter addressing the issue and, when that did not clear things up, declarations. *See* ECF No. 64, at 3, 5-6; ECF No. 63, at 4. In fact, Mr. Liebowitz actively stonewalled Mr. Newberg's request

---

[6]     Mr. Liebowitz also argues that it was not his responsibility to confirm that the Photograph was properly registered because "the burden to retrieve a certified deposit copy from the U.S. Copyright Office rests upon the alleged infringer." ECF No. 57, at 3. The cases he cites in support of that proposition, however, are inapposite because they involved challenges by defendants to the validity of an alleged registration. *See, e.g.*, *Goodman v. Univ. Beauty Prods., Inc.*, No. 17-CV-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018) (concluding that the defendants "failed to proffer any evidence" in support of their argument at summary judgment "that the registration is deficient"). The argument also misses the point: Mr. Liebowitz personally signed and filed the Complaint, which contained what he now admits was a false allegation. It was his obligation to conduct a reasonable investigation to confirm the accuracy of the affirmative allegations to which he chose to sign his name, particularly after Mr. Newberg alerted him to the allegation's falsity at the initial pretrial conference.

42

for discovery on the issue at the initial pretrial conference, stating: "I don't know what defense counsel means about other registrations or other photographs. I will have to see what my office did, but this is the correct registration." Initial Conf. Tr. 17-18. It is hard to avoid the conclusion that Mr. Liebowitz hoped to settle the case before the truth came to light. In fact, Mr. Freeman himself conceded that the firm's "custom and practice" had been to file suits without checking if the works in question are actually registered to avoid "an additional expense," at least until they "believe that [they]'re going to proceed with the case to summary judgment." Hearing Tr. 139. Clearly hoping to settle the case before reaching that stage, Mr. Liebowitz argued to the Court at the initial pretrial conference that "the appropriate thing to do at this stage is to just set discovery, set the dates, and let the parties engage and hopefully during that process the parties could eventually get to a settlement number." Initial Conf. Tr. 18.

Once again, this misconduct is not unique to this case, but fits a broader pattern. In another recent case, for example, Mr. Liebowitz filed suit alleging copyright infringement of a photograph of musician Lou Reed, even though the alleged registration explicitly excluded "previously published works" like the photograph. *Rock*, 2020 WL 468904, at *1. Mr. Liebowitz nevertheless pressed the suit. When confronted about the registration issue, he "produced no evidence that the Photograph was registered" and "actively stonewalled discovery requests" for information about the alleged registration. *Id*. at *1, *3. Mr. Liebowitz also defied Judge Carter's order to obtain and produce any relevant deposit files from the Copyright Office. *Id*. at *3. "After it became apparent that the Photograph was not registered," Mr. Liebowitz attempted to argue that the registration had "mistakenly" excluded the Photograph, without any evidentiary support. *Id*. at *4. Judge Carter rejected the argument and concluded that "[t]his

conduct — of failing to investigate the evidentiary basis for a Complaint, of stonewalling discovery, of misleading the Court, and of making meritless arguments — undoubtedly demonstrates bad faith." *Id*. He therefore sanctioned Mr. Liebowitz and his firm $10,000. *See id*. at *7.

As in *Rock*, the conduct of Mr. Liebowitz and his firm in this case "undoubtedly demonstrates bad faith." *Rock*, 2020 WL 468904, at *4. As a result of that bad faith, Mr. Newberg and Bandshell had to bear the expense of defending a case that was fatally flawed from its inception. And, as in *Rock*, when the truth came to light, Mr. Liebowitz feebly blamed the false allegation in the Complaint on "clerical" or "administrative error." ECF No. 57, at 3; ECF No. 63, at 4. Mr. Liebowitz and his firm cannot escape responsibility so easily. Their willful disregard of the registration requirement is part of their broader strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits. *See Otto v. Hearst Comm'ns, Inc.*, No. 17-CV-4712 (GHW), 2020 WL 377479, at *3 & n.1 (S.D.N.Y. Jan. 23, 2020) (noting that "Otto and [Mr. Liebowitz, his counsel,] consistently and undeniably asserted inflated values for Otto's copyright" using "figures [that] were wholly unsupported by the evidentiary record"). And by filing the lawsuit without conducting any investigation into the truth or falsity of Paragraph 9 of the Complaint, and by maintaining the lawsuit and failing to conduct any investigation even after being put on notice about a potential registration problem, Mr. Liebowitz and his firm "multiplie[d] the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927. It follows that sanctions are warranted on this basis, as well.

**D. The Nature and Amount of the Appropriate Sanctions**

So what sanctions should the Court impose? In deciding what sanctions to impose, the

Court may consider the following factors, among others: "(i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there is a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (discussing the Court's inherent authority to investigate and sanction frauds on the Court). Sanctions should be "no more severe than reasonably necessary to deter repetition" of the misconduct "or comparable conduct by similarly situated persons." *Macolor*, 2015 WL 1267337, at *5 (internal quotation marks omitted).

      If specific deterrence — that is, deterring Mr. Liebowitz from repeating his misconduct — were the sole consideration, it is not clear that any sanction (short of, perhaps, disbarment) would suffice. After all, his first lie in this case occurred only one day after he was dressed down by Judge Seibel for repeatedly lying about his grandfather's death, and despite a warning from the Court to be "very, very, very careful" about what he said. Initial Conf. Tr. 7. And thereafter, as in the case before Judge Seibel, he dug his hole even deeper, repeating his lies over and over, including under oath. (In fact, he arguably expanded upon his lies, concocting, after the fact, his "custom and practice" excuse.) Even more troubling, as the discussion above makes clear, Mr. Liebowitz's misconduct in this case is part of a larger pattern that has led judges on this court — and, as his practice has expanded to other districts, judges on other courts — to chastise him, impose sanctions on him, and require his clients to post bonds to cover future adverse awards of attorney's fees and costs resulting from his misbehavior. The list of such cases is too long to cite here and, thus, is attached as an Appendix to this Opinion and Order.

45

And even that list is likely not exhaustive. For one thing, there may well be orders imposing sanctions or requiring a bond that are not easily searchable on Westlaw or Lexis. For another, as this case, the case before Judge Seibel, and this Court's prior decision imposing sanctions in *Rice* make clear, Mr. Liebowitz frequently drops his cases when the going gets tough and sanctions are on the horizon. *See Berger* Tr. 25 ("[W]hen [Mr. Liebowitz] gets into hot water, he just decides to kick the can down the road as long as he can: Try to drop the case, hope the judge will go away."); *see, e.g., Ramales v. Alexander Wang Inc.*, No. 20-CV-0926 (DLC), ECF No. 32, ¶¶ 9-11 (S.D.N.Y. June 2, 2020) (opposing counsel's declaration in support of a sanctions motion stating that counsel had repeatedly requested licensing history from Mr. Liebowitz, who first claimed he could not retrieve it "without a subpoena," and then admitted that there was "no licensing history and that his client was wrong," at which point he settled the case and avoided adjudication of the sanctions motion). Undoubtedly there are cases in which that tactic succeeded and Mr. Liebowitz was never held to account. Thus, there may be no sanction short of disbarment that would stop Mr. Liebowitz from further misconduct.

But because disbarment is an issue for the Grievance Committee, this Court is left with the task of crafting a sanction that could conceivably deter Mr. Liebowitz from repeating his misconduct again. Moreover, another purpose of sanctions is general deterrence — that is, deterrence of "comparable conduct by similarly situated persons." *Macolor*, 2015 WL 1267337, at *5 (internal quotation marks omitted). In view of both considerations, it is plain that substantial sanctions — a mix of monetary and non-monetary sanctions — are well justified. As discussed above, much of Mr. Liebowitz's misconduct was the product of intentional bad faith. In addition, Bandshell and Mr. Newberg (who handled the case pro bono) incurred considerable

expenses as a result of Mr. Liebowitz's misconduct, having to defend against a lawsuit that was

flawed from its inception, having to appear at a mediation that was doomed from the start, and

having to litigate the issue of sanctions.  Moreover, there is, to put it mildly, a long and

ignominious history of misbehavior by Mr. Liebowitz, and an enormous risk that he will

continue his pattern of misbehavior.  And finally, Mr. Liebowitz never corrected his misconduct,

but rather repeated his lies under oath and, in the case of the false allegation regarding the

copyright registration, proffered unconvincing excuses.  *See Passlogix*, 708 F. Supp. 2d at 394.

In light of that record, and the fact that prior efforts to deter him — including hefty fines, *see,*

*e.g.*, *Ward*, 2020 WL 2219070, at *4 ($20,000), and sizeable awards of attorney's fees and costs,

*see*, *e.g.*, *Craig*, 2019 WL 2992043, at *4, *7 ($98,532.62) — were insufficient, substantial

sanctions are plainly warranted.

Additionally, the Court concludes that the same sanctions should be imposed on Mr.

Liebowitz and on his firm.[7]  Without question, an attorney's actions may be attributed to his firm

for purposes of sanctions where the firm is small; the attorney is its founding partner and leader;

and, throughout the litigation, the attorney's actions were indistinguishable from those of the

firm.  *See Enmon*, 675 F.3d at 148; *see also, e.g.*, *Rock*, 2020 WL 468904, at *4 (imposing

---

[7] The Court declines to sanction Mr. Usherson himself, as "the sins of the lawyer" are not automatically "visited on the client," and the evidence in the record does not clearly and convincingly demonstrate any bad-faith misconduct by Mr. Usherson.  *See, e.g.*, *Ransmeier v. Mariani*, 718 F.3d 64, 71 (2d Cir. 2013).  If anything, Mr. Usherson was ill served by Mr. Liebowitz — who likely agreed to voluntary dismissal of Mr. Usherson's claims in an effort to protect his own hide.  If so, Mr. Usherson may in fact have a legal malpractice claim against Mr. Liebowitz.  *See Mondragon*, 2020 WL 2395641, at *10 (characterizing Mr. Liebowitz's testimony at the evidentiary hearing in *this* case, based on a review of the transcript, as "a damning self-indictment by a lawyer who has perfected a recipe for the regular commission of legal malpractice"); *see also id*. at *12 (finding that "Mr. Liebowitz regularly is committing legal malpractice"); *id*. at 13 ("Mr. Liebowitz . . . represents a clear and present danger . . . to the interests of his own clients.").

sanctions on Mr. Liebowitz and his firm jointly and severally); *Craig v. UMG Recordings, Inc.*, No. 16-CV-5439 (JPO), 2019 WL 2992043, at \*10 (S.D.N.Y. July 9, 2019) (same). That is plainly the case here. Mr. Liebowitz admits that he is the "founding member of Liebowitz Law Firm, PLLC," ECF No. 63, ¶ 2; the firm is small, consisting of mostly staff and only a handful of lawyers other than Mr. Liebowitz, including Mr. Freeman and Mr. Liebowitz's sister; and throughout this litigation, Mr. Liebowitz's actions have been indistinguishable from those of his firm, as evidenced by the fact that Mr. Freeman appeared at the November 14, 2019 initial conference on behalf of both Mr. Liebowitz and the firm in connection with the sanctions motion. What is more, in an effort to minimize his personal responsibility, Mr. Liebowitz himself has repeatedly tried to place blame for some of his misconduct on his firm, as he did most clearly with the false allegation in Paragraph 9 of the Complaint. *See* ECF No. 63, ¶¶ 4-9. Accordingly, his actions may be attributed to the firm, and the sanctions that follow are imposed jointly and severally on them both.

The Court begins with monetary sanctions. A "well-accepted" measure of sanctions for "bad faith conduct that unnecessarily prolongs a proceeding and multiplies the expense incurred by an adversary" is the opposing counsel's attorney's fees and costs. *Homkow v. Musika Records, Inc.*, No. 04-CV-3587 (KMW) (THK), 2009 WL 721732, at \*25 (S.D.N.Y. Mar. 18, 2009); *see also* 28 U.S.C. § 1927 (expressly requiring that the offending party "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"). Significantly, that is true even though the principal goal of sanctions is not to remedy harm to the opposing side, but to deter repetition of the misconduct or comparable conduct by others. Thus, courts have pegged sanctions to attorney's fees and costs even where the opposing counsel did

not actually receive fees. *See, e.g.*, *Dallas v. Goldberg*, No. 95-CV-9076 (LTS) (RLE), 2003
WL 22872325, at *1 (S.D.N.Y. Dec. 5, 2003) (requiring the defendants to pay, as sanctions
under Rule 16 and the court's inherent authority, "reasonable attorneys' fees and expenses
incurred" even though the plaintiff's lawyer had handled the case "on a pro bono basis at the
request of the Court"); *see also Nat'l Lawyers Guild v. Att'y Gen.*, 94 F.R.D. 616, 618 (S.D.N.Y.
1982) ("[C]ourts have rejected the contention, in situations analogous to Rule 37 sanctions, that
plaintiffs represented on a pro bono basis are not entitled to attorneys' fees, or should receive a
reduced amount." (citations omitted)); *cf. Centennial Archaeology, Inc. v. AECOM, Inc.*, 688
F.3d 673, 680 (10th Cir. 2012) ("The purpose of Rule 37 attorney-fee sanctions would be
thwarted if a party could escape the sanction whenever opposing counsel's compensation is
unaffected by the abuse."). *But see Goldman v. Barrett*, No. 15-CV-9223 (PGG), 2019 WL
4572725, at *7 n.9 (S.D.N.Y. Sept. 20, 2019) (expressing skepticism that "pro bono counsel is
entitled to be compensated at market rates in connection with a sanctions award" (internal
quotation marks and alterations omitted)).

    Thus, the Court concludes that the reasonable attorney's fees and costs Bandshell would
have incurred in connection with the mediation and the sanctions motion are an appropriate
measure of sanctions here. That is true even though Bandshell's counsel handled the case pro
bono. And it is true even though Bandshell and Mr. Newberg disclaimed fees and costs when
agreeing to dismissal of the case and, thus, do not seek to recover the fees and costs for
themselves. Here, as set forth in an accounting submitted by Bandshell at the Court's request,
fees would have come to $84,435 and costs did come to $1,423.99, for a total of $85,858.99.
ECF 56, at 2. The fees are based on Mr. Newberg's hourly rate of $855 and his associate's

hourly rate of $420.  *See id*.

      When evaluating attorney's fees, a court must determine whether the proposed fees are "reasonable," based on "a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R. Co*., 658 F.3d 154, 166 (2d Cir. 2011).  Given Mr. Newberg's experience, credentials, and position as a partner at McGuireWoods, and taking into account "all of the case-specific variables . . . relevant to the reasonableness of attorney's fees," *Simmons v. N.Y.C. Transit Auth*., 575 F.3d 170, 172 (2d Cir. 2009) (emphasis omitted), including the fact that Mr. Newberg handled the case pro bono, the Court finds that his hourly rate is reasonable.  *See, e.g., Rock*, 2020 WL 468904, at *5.  His associate's rate, however, exceeds the reasonable rate for an attorney with less than one year's experience.  *See Tiffany & Co. v. Costco Wholesale Corp*., No. 13-CV-1041 (LTS) (DCF), 2019 WL 120765, at *10 (S.D.N.Y. Jan. 7, 2019) (finding that rates of "$315-$585 per hour for an associate (depending on experience)" are reasonable).  Thus, the Court reduces the associate's hourly rate to $315 — a reduction of $105 per hour for 22.3 hours of work, for a total reduction of $2,341.50.  The Court concludes that the hours both attorneys worked and their costs were reasonable.  That yields a total of $83,517.49 in fees and costs attributable to the mediation and the sanctions motion.  Thus, the Court orders Mr. Liebowitz and his firm, jointly and severally, to pay to the Court $83,517.49 for misrepresenting that the Mediator gave permission for Mr. Usherson not to attend the mediation in person and for his multiple other violations of the Court's Orders.

      In addition, the Court orders Mr. Liebowitz and his firm, jointly and severally, to pay to the Court $20,000 for falsely alleging that the Photograph was registered, not conducting a reasonable investigation prior to filing the lawsuit and after being put on notice of the

registration issue, and maintaining the suit thereafter.  This type of misconduct is a self-avowed "custom and practice" of the Liebowitz Law Firm, Hearing Tr. 139, and has undoubtedly affected other cases, *see, e.g.*, *Rock*, 2020 WL 468904, at *2 ("Plaintiff and his counsel knew, or should have known, that the Photograph was not registered.").  Taking into consideration all of the relevant factors, including Mr. Liebowitz's stonewalling of any investigation into the registration issue once it was raised by opposing counsel, the Court concludes that sanctions of $20,000 are no greater than necessary to provide adequate deterrence, to Mr. Liebowitz, to his firm. and to others similarly situated.  *See, e.g.*, *Ward*, 2020 WL 2219070, at *3-4 (imposing $20,000 in sanctions for filing a lawsuit in bad faith and proceeding even after being notified that venue was improper).

The Court imposes these sanctions, as well as the non-monetary sanctions discussed below, pursuant to Rule 16, Section 1927, and the Court's inherent authority.  The Court finds that, in total, these sanctions are "no more severe than reasonably necessary to deter repetition" of the misconduct "or comparable conduct by similarly situated persons."  *Macolor*, 2015 WL 1267337, at *5 (internal quotation marks omitted); *cf. Craig*, No. 16-CV-5439, ECF No. 110 (sanctioning Mr. Liebowitz and his firm in the amount of $98,532.62 in attorney's fees and costs); *Rock*, 2020 WL 468904, at *4, *7 (granting attorney's fees against Mr. Liebowitz's client totaling over $100,000, of which Mr. Liebowitz and his firm were responsible for $10,000).  In fact, if anything, the scope of Mr. Liebowitz's misconduct, his overall record, and the fact that the case was fatally flawed from its inception would have supported a larger monetary sanction.

In addition, the Court concludes that two types of non-monetary sanctions are warranted to deter future misconduct.  First, Mr. Liebowitz shall be required to serve a copy of this Opinion

and Order on Mr. Usherson and every other current client of the Liebowitz Law Firm and to file

it on the docket of any pending case brought by Mr. Liebowitz or any attorney working for his

firm, as well as on the docket of any new case brought within one year from the date of the

Opinion and Order by Mr. Liebowitz or any attorney working for his firm. *See In re Richard P.*

*Liebowitz*, No. 19-MC-80228 (JD), ECF No. 17, at 2-3 (N.D. Cal. June 12, 2020) (finding that

Mr. Liebowitz "has falsely held himself out as a member of this Court's bar on multiple

occasions," creating "good grounds for doubting that Liebowitz should be permitted to practice

in this District even on a pro hac vice basis," and thus requiring Mr. Liebowitz to "submit a copy

of this Order in every open case in this District in which he has been admitted pro hac vice," as

well as "with every future pro hac vice application he may file in this District between June 13,

2020, and June 13, 2021"); *Gallop*, 667 F.3d at 230 (requiring sanctioned counsel "for a period

of one year from the date of entry of this order, to provide notice of the sanctions imposed upon

him in this case . . . to any federal court in this Circuit before which he appears or seeks to

appear"). In addition, in any action that is filed within one year of the date of this Opinion and

Order by Mr. Liebowitz or any attorney working for the Liebowitz Law Firm that involves

allegations of copyright infringement, the complaint must include as an attached exhibit a copy

of the deposit files maintained by the U.S. Copyright Office reflecting the registration of the

relevant copyrighted work or works at issue. *Cf. Gertskis v. N.Y. Dep't of Health & Mental*

*Hygiene*, No. 13-CV-2024 (JMF), 2014 WL 2933149, at *7 (S.D.N.Y. June 27, 2014) (requiring

that any future action be filed as an application for leave to file with a copy of the order imposing

sanctions for frivolous litigation); *In re Martin-Trigona*, 592 F. Supp. 1566, 1573 (D. Conn.

1984) (Cabranes, J.) (entering a permanent injunction placing limits on new lawsuits in response

to a history of vexatious and harassing litigation).

Finally, the Court will send a copy of this Opinion and Order to the Chair of the Court's

Grievance Committee to take whatever action the Committee deems appropriate. *See Berger* Tr.

27 (finding "this series of events serious enough to warrant . . . consideration" by the Grievance

Committee); *Mondragon*, 2020 WL 2395641, at *1, *14 (concluding that "steps should be taken

promptly by appropriate disciplinary authorities to suspend [Mr. Liebowitz's] ability to file new

cases unless and until he has demonstrated he has appropriate systems in place to assure regular

compliance with court rules and rules of professional conduct"); *cf. Konangataa v. Am. Broad.*

*Cos.*, No. 16-CV-7382 (LAK), No. 16-CV-7383 (LAK), No. 16-CV-7472 (LAK), 2017 WL

2684067, at *3 (S.D.N.Y. June 21, 2017) (noting that "defendants may pursue any claims of

professional misconduct on the part of plaintiff's attorney [Mr. Liebowitz] before appropriate

disciplinary bodies").

## CONCLUSION

The Supreme Court has observed that "[m]embership in the bar is a privilege burdened

with conditions. An attorney is received into that ancient fellowship for something more than

private gain. He becomes an officer of the court, and, like the court itself, an instrument or

agency to advance the ends of justice." *In re Snyder*, 472 U.S. 634, 644 (1985) (internal

quotation marks and alterations omitted). Further, "[a]s an officer of the court, a member of the

bar enjoys singular powers that others do not possess." *Id.* at 644. In exchange for "[t]he license

granted by the court," members of the bar must "conduct themselves in a manner compatible

with the role of courts in the administration of justice." *Id.* at 645.

53

In this case and others, Mr. Liebowitz and his firm have fallen far short of that standard and failed to "conduct themselves in a manner compatible with the role of courts in the administration of justice." *Id*. at 645. Accordingly, and for the reasons stated above, the Court concludes that sanctions must be imposed on Mr. Liebowitz and his firm, as follows:

(1) **Within seven days of the date of this Opinion and Order**, Mr. Liebowitz and his firm shall pay to the Clerk of Court sanctions totaling $103,517.49;

(2) **By the same date**, Mr. Liebowitz shall serve a copy of this Opinion and Order by overnight courier on Mr. Usherson and file proof of such service on ECF;

(3) **Within thirty days of the date of this Opinion and Order**, Mr. Liebowitz and his firm shall serve a copy of this Opinion and Order, either by email or by overnight courier, on every one of the firm's current clients and Mr. Liebowitz shall file a declaration attesting to such service on ECF;

(4) **By the same date**, Mr. Liebowitz and his firm shall file a copy of this Opinion and Order on the docket of any currently pending case that was brought by Mr. Liebowitz or his firm and Mr. Liebowitz shall file a declaration attesting to the same on ECF;

(5) In any action that is filed **within one year of the date of this Opinion and Order** by Mr. Liebowitz or his firm, Mr. Liebowitz and his firm shall file a copy of this Opinion and Order on the docket of the case **within two days of filing the complaint or otherwise initiating the case**; and

(6) In any action that is filed **within one year of the date of this Opinion and Order** by Mr. Liebowitz or his firm that involves allegations or claims of copyright infringement, the complaint shall include as an attached exhibit a copy of the deposit files maintained by the U.S. Copyright Office reflecting prior registration of the relevant copyrighted work or works at issue.

In addition, as noted above, the Court will send a copy of this Opinion and Order to the Chair of the Court's Grievance Committee to take whatever action the Committee deems appropriate.

The Clerk of Court is directed to terminate ECF No. 14.

SO ORDERED.

Dated: June 26, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge

54

# APPENDIX

1. *Sadowski v. Ziff Davis, LLC*, No. 20-CV-2244 (DLC), 2020 WL 3397714, at *4 (S.D.N.Y. June 19, 2020) (citing the fact that "Liebowitz regularly fails to comply with court orders . . . [and] has been repeatedly sanctioned" as a factor weighing in favor of requiring a bond to cover fees and costs, and noting that "[w]hile one can always hope that Liebowitz will comply with court orders in this case and conform his behavior to the standards of his chosen profession, it is difficult to be sanguine on this score given his track record").

2. *In re Richard P. Liebowitz*, No. 19-MC-80228 (JD), ECF No. 17, at 1-2 (N.D. Cal. June 12, 2020) (finding that Mr. Liebowitz "has falsely held himself out as a member of this Court's bar on multiple occasions," even though he "never has been a member"; noting that his "unprofessional and blameworthy conduct" is "consistent with the extensive public record of discipline he has amassed in courts across the United States"; and concluding that there are "good grounds for doubting that Liebowitz should be permitted to practice in this District even on a pro hac vice basis").

3. *Ramales v. Alexander Wang Inc.*, No. 20-CV-0926 (DLC), ECF No. 32, ¶¶ 9-11 (S.D.N.Y. June 12, 2020) (declaration in support of a sanctions motion stating that opposing counsel repeatedly requested licensing history from Mr. Liebowitz, who first claimed he could not retrieve it "without a subpoena," and then admitted that there was "no licensing history and that his client was wrong," at which point he filed a notice of settlement at ECF No. 39 and avoided adjudication of the sanctions motion).

4. *Geerds v. San Francisco Bay View Inc.*, No. 19-CV-6465 (JST), ECF No. 29 (N.D. Cal. June 10, 2020) (denying Mr. Liebowitz's motion for admission *pro hac vice* in a case he filed in the Northern District on October 8, 2019, *one day after* he was disbarred in *In re Richard P. Liebowitz*, No. 19-MC-80228 (JD), ECF No. 3 (N.D. Cal. Oct. 7, 2019)).

5. *Polaris Images Corp. v. ENTtech Media Grp., LLC*, No. 19-CV-8208 (KPF), 2020 U.S. Dist. LEXIS 97851, at *3 (S.D.N.Y. June 3, 2020) (finding that the Court could not award attorney's fees under 17 U.S.C. § 505 against Mr. Liebowitz's client because Mr. Liebowitz had filed a notice of voluntary dismissal before the Court ruled on the defendant's motion to dismiss, and noting that "[t]he Court sympathizes with ENTtech's frustration with Plaintiffs' conduct, and is only too aware of the notoriety that Plaintiffs' counsel, Richard Liebowitz, has obtained in this District").

6. *Alvarado v. Mother Jones, LLC*, No. 19-CV-6417 (JST), ECF No. 25, at 2-4 (N.D. Cal. May 14, 2020) (denying Mr. Liebowitz's motion to appear pro hac vice after finding that Mr. Liebowitz continues to "regularly" file and litigate cases in the Northern District of California following his order of disbarment in *In re Richard P. Liebowitz*).

7. *Mondragon v. Nosrak LLC*, No. 19-CV-1437 (CMA) (NRN), 2020 WL 2395641, at *1,

i

*14 (D. Colo. May 11, 2020) (concluding that "Mr. Liebowitz's continued practice of law represents a clear and present danger to the fair and efficient administration of justice, and steps should be taken promptly by appropriate disciplinary authorities to suspend his ability to file new cases unless and until he has demonstrated he has appropriate systems in place to assure regular compliance with court rules and rules of professional conduct," and requiring that Mr. Liebowitz associate with a Colorado-based attorney with at least five years of experience, who must co-sign any filings in the case, and that Mr. Liebowitz file a copy of the sanctions order in all other cases he has filed in the District of Colorado or files in the following sixth months).

8.  *Chevrestt v. Barstool Sports, Inc.*, No. 20-CV-1949 (VEC), 2020 WL 2301210, at *2 & n.4 (S.D.N.Y. May 8, 2020) (sanctioning Mr. Liebowitz under Rule 16, and finding that his attempt to plead "administrative oversight" was "disingenuous, distasteful, unpersuasive, and likely perjurious," noting that he filed twenty-five new cases during the time he allegedly was prevented from complying with the Court's order to timely file proof of service).

9.  *Ward v. Consequence Holdings, Inc.*, No. 18-CV-1734 (NJR), 2020 WL 2219070, at *3 (S.D. Ill. May 7, 2020) (concluding that Mr. Liebowitz "likely filed this action as a bad faith, frivolous effort to harass [the defendant]"; imposing $20,000 in sanctions under the Court's inherent authority; and noting that "Liebowitz's conduct in this case has been irresponsible, unreasonable, and detrimental to the fair administration of justice, harming both [the defendant], the Court, and even his own client, who has lost his opportunity to advance what appears to have been a meritorious claim").

10. *Wisser v. Vox Media, Inc.*, No. 19-CV-1445 (LGS), 2020 WL 1547381, at *3, *6 (S.D.N.Y. Apr. 1, 2020) (imposing sanctions for various discovery violations, including affixing his client's signature to interrogatory responses without authorization and without the client having even read the responses; and finding that "[c]lear evidence shows that Mr. Liebowitz's and his firm's actions . . . were so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose" (internal quotation marks omitted)).

11. *Masi v. Mythical Entm't*, No. 19-CV-438 (FL), 2020 WL 1490704, at *1-2 (E.D.N.C. Mar. 24, 2020) (dismissing the case without prejudice for failure to comply with court orders because of Mr. Liebowitz's refusal to cure a "litany" of filing deficiencies, which "mirrored numerous deficiencies in other cases before this court involving attorney Liebowitz," in violation of the Court's repeated warnings and orders).

12. *Dermansky v. Tel. Media, LLC*, No. 19-CV-1149 (PKC) (PK), 2020 U.S. Dist. LEXIS 44475, at *22 n.7, 24 (E.D.N.Y. Mar. 13, 2020) (citing Mr. Liebowitz's "misleading conduct," such as "cherry picking the few cases that support his maximum statutory damages request while ignoring the more numerous cases litigated by the same attorney awarding far less," in past cases and the current case, and warning him that he may be subject to Rule 11 sanctions if he continues to engage in such conduct (internal quotation

marks omitted)).

13. *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618 (ALC), 2020 WL 468904, at
    *4, *7 (S.D.N.Y. Jan. 29, 2020) (granting attorney's fees against Mr. Liebowitz's client
    totaling over $100,000, $10,000 of which Mr. Liebowitz and his firm were responsible
    for as sanctions, and finding that Mr. Liebowitz's "conduct — of failing to investigate the
    evidentiary basis for a Complaint, of stonewalling discovery, of misleading the Court,
    and of making meritless arguments — undoubtedly demonstrates bad faith").

14. *Otto v. Hearst Comm'ns, Inc.*, No. 17-CV-4712, 2020 WL 377479, at *3-4 (S.D.N.Y.
    Jan. 23, 2020) (denying Mr. Liebowitz's motion for attorney's fees because he and his
    client Otto "consistently and undeniably asserted inflated values for Otto's copyright"
    that were "wholly unsupported by the evidentiary record"; and noting that "[t]he
    protection of copyright is an important value, but there is little benefit to the copyright
    law in rewarding Otto for prolonging litigation in pursuit of an unjustifiably inflated
    claim").

15. *Karavani v. Nooklyn, Inc.*, No. 19-CV-1588 (ENV) (RER), 2019 U.S. Dist. LEXIS
    224199, at n.2 (E.D.N.Y. Dec. 13, 2019) (affirming the magistrate judge's decision to
    require Mr. Liebowitz's client to post a bond because "[t]he bond order was well founded
    . . . and was heavily buttressed [by] multiple recent cases where plaintiff's attorney has
    been ordered to post a bond and been previously sanctioned for misconduct in similar
    circumstances").

16. *Sands v. Bauer Media Grp. USA, LLC*, No. 17-CV-9215 (LAK), 2019 WL 6324866, at
    *1-3 (S.D.N.Y. Nov. 26, 2019) (dismissing an action with prejudice because of Mr.
    Liebowitz's client's failure to post a bond to cover costs and attorney's fees awarded to
    the opposing party because of Mr. Liebowitz's "discovery abuse" and "failure . . . to
    comply with discovery obligations," and noting that "[i]n his zeal to deny that he files
    suits to extort settlements," Mr. Liebowitz stated falsely under penalty of perjury that his
    client did not make a settlement demand in this case, even though he plainly did at both
    the initial conference and in an email "from Mr. Liebowitz . . . in which Mr. Liebowitz
    himself proposed settling for $25,000").

17. *Berger v. Imagina Consulting, Inc.*, No. 18-CV-8956 (CS), 2019 WL 6695047, at *4
    (S.D.N.Y. Nov. 1, 2019) (holding Mr. Liebowitz in contempt of Court, imposing
    sanctions of $500 per day he failed to comply with the Court's orders, and ordering Mr.
    Liebowitz to appear and show cause on pain of "arrest by the United States Marshals
    Service" in connection with Mr. Liebowitz's misrepresentation about the date on which
    his grandfather passed away, which he made in order to justify missing a discovery
    conference, and his refusal to provide documentation reflecting the actual date of passing
    — misconduct which would later be referred to the Southern District's Grievance
    Committee).

18. *Polaris Images Corp. v. CBS Interactive, Inc.*, No. 19-CV-3670 (VEC), 2019 WL

5067167, at *3 (S.D.N.Y. Oct. 9, 2019) (imposing sanctions under Rule 16; concluding that "given the frequency with which Mr. Liebowitz commits 'administrative errors,' the undersigned is unconvinced that they are indeed good faith oversights"; and noting "Mr. Liebowitz's continual disregard for this Court's orders in multiple other cases").

19. *In re Richard P. Liebowitz*, No. 19-MC-80228 (JD), ECF No. 3 (N.D. Cal. Oct. 7, 2019) (ordering Mr. Liebowitz removed from the membership roll of the bar of the Court after he filed a case without being an active member of the state bar and submitted an explanation that was "not responsive and does not say anything at all about his membership in the State Bar of California"; and directing him to "disclose these [order to show cause] proceedings to any judge in this district before whom Liebowitz has a pending pro hac vice application").

20. *Craine v. Stylish Curves LLC*, No. 19-CV-3995 (BMC), Text-Only Order (E.D.N.Y. Sept. 3, 2019) (sanctioning Mr. Liebowitz for failing to appear at an initial status conference or request an entry of default, as ordered by the Court; noting that Mr. Liebowitz "made no effort to even contact this Court" until more than a week after the deadline passed; and, after rescheduling the status conference, directing Mr. Liebowitz to "attend this conference personally, not send some other lawyer").

21. *Mango v. Democracy Now! Prods*., No. 18-CV-10588 (DLC), 2019 U.S. Dist. LEXIS 123550, at *15 (S.D.N.Y. July 24, 2019) (concluding that "[t]he history of Liebowitz's failure to comply with court orders counsels in favor of the imposition of an additional bond" on his client).

22. *Rice v. NBCUniversal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at *4-5 (S.D.N.Y. July 10, 2019) (imposing $8,745.50 in sanctions under Rule 16 and the Court's inherent authority, and finding that Mr. Liebowitz's "disobedience of the Court's Orders — both the Orders requiring mediation and Liebowitz's appearance on May 2 — was willful").

23. *Craig v. UMG Recordings, Inc*., No. 16-CV-5439 (JPO), 2019 WL 2992043, at *4, *7 (S.D.N.Y. July 9, 2019) (holding Mr. Liebowitz and his firm jointly and severally liable for an attorney's fees and costs award of $98,532.62, and "reaffirm[ing] [the Court's] inference that Liebowitz acted in bad faith" in filing a frivolous motion).

24. *Stelzer v. Lead Stories LLC*, No. 19-CV-0473 (PAB) (KMT), 2019 WL 5095689, at *4 (D. Colo. July 3, 2019) (granting dismissal with prejudice as a sanction for repeated failures to comply with deadlines and court orders, including a failure to attend a scheduled conference, and noting that "Plaintiff's counsel has previously been sanctioned in another district for similar behavior, which clearly has had no deterrent effect").

25. *Rice v. Musee Lingerie, LLC*, No. 18-CV-9130 (AJN), 2019 U.S. Dist. LEXIS 111487, at *6 (S.D.N.Y. July 3, 2019) (noting that "Plaintiff's attorney, Mr. Liebowitz, has previously been sanctioned by courts in this District for failure to comply with court orders and for filing misleading documents with the courts," and ordering the imposition

iv

of a bond on his client because "Defendant here has a justified concern that Plaintiff, through his counsel, will evade court orders, or not proceed with this litigation prudently").

26. *Stridiron v. Cmty. Broads., LLC*, No. 19-CV-108 (MAD) (ATB), 2019 U.S. Dist. LEXIS 103805, at *10-11 (N.D.N.Y. June 21, 2019) (noting that "like in the present matter, Mr. Liebowitz has regularly been found to have failed to comply with court orders," and "courts in the Southern and Eastern Districts of New York have now begun to regularly require plaintiffs represented by Mr. Liebowitz to file bonds before proceeding further with his lawsuits, after a number of them were dismissed as frivolous from the bench or voluntarily dismissed by the plaintiff when it was made clear that the suits were subject to dismissal").

27. *Lee v. W Architecture & Landscape Architecture, LLC*, No. 18-CV-5820 (PKC) (CLP), 2019 U.S. Dist. LEXIS 89335, at *12-13 (E.D.N.Y. May 28, 2019) (relying on "*counsel*'s history of violating court orders," both "in this case" and in "other cases," to impose a bond on Mr. Liebowitz's client, and noting that "plaintiff has failed to timely file motion papers and failed to move this case forward").

28. *Dvir v. Dancing Astronaut, Inc.*, No. 18-CV-9416 (VEC), ECF No. 31, at 1, 6 (S.D.N.Y. May 22, 2019) (imposing sanctions under Rule 16 because "Mr. Liebowitz failed to comply with this Court's order — communicated to him in-person, face-to-face, by the undersigned," to be suspended for eighteen months in the "hopes" of deterring "Mr. Liebowitz's future noncompliance with [the Court's] orders").

29. *Otto v. Hearst Comm'ns, Inc.*, No. 17-CV-4712 (GHW) (JLC), 2019 WL 1034116, at *12 (S.D.N.Y. Feb. 21, 2019) (concluding that sanctions were not warranted "on the current record" for Mr. Liebowitz's alleged misrepresentations during settlement negotiations, although it was "a close call," and noting that "[t]his is hardly the first time that Liebowitz and his firm have had their reputation called into question, and the Court can only hope it will be the last").

30. *Pereira v. 3072541 Canada Inc.*, No. 17-CV-6945 (RA), 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) (finding that "Mr. Liebowitz failed to follow this Court's orders and rules in at least three ways," although ultimately declining to impose monetary sanctions, and expressing concern over "Mr. Liebowitz's repeated failures to follow the orders and rules of this Court and others within the district, as well as his propensity to take unreasonable positions and to omit crucial facts — or even to make outright misrepresentations — in an apparent attempt to increase costs and to extort unwarranted settlements").

31. *McDermott v. Monday Monday, LLC*, No. 17-CV-9230 (DLC), 2018 U.S. Dist. LEXIS 184049, at *9-10 (S.D.N.Y. Oct. 26, 2018) (denying Mr. Liebowitz's request for the Court to redact the term "copyright troll" from an opinion that described him as such because "[a]s evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements, it is undisputable that Mr. Liebowitz is

a copyright troll").

32. *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 529-30 (S.D.N.Y. 2018) (imposing discovery sanctions because "Plaintiff [represented by Mr. Liebowitz] has offered no explanation for his failure to produce copyright application-related materials during discovery," and therefore denying Plaintiff's motion for summary judgment because "there is a genuine issue of material fact as to whether the photographs that are the subject of Plaintiff's infringement claim are included in the copyright registration").

33. *Seidman v. GAX Prods., LLC*, No. 18-CV-2048 (RA) (BCM), ECF No. 23, at 3 (S.D.N.Y. Sept. 6, 2018) (sanctioning Mr. Liebowitz for serving unsigned interrogatory responses, "even after this Court expressly reminded [his client] of that obligation" in an order, and making arguments defending his actions that were "meritless as a matter of law").

34. *Leibowitz v. Galore Media Inc.*, No. 18-CV-2626 (RA) (HBP), ECF No. 18, at 6 (S.D.N.Y. July 11, 2018) (ordering Mr. Liebowitz's client to post a bond in part because "defendant has a justified concern that plaintiff's counsel, Richard P. Liebowitz, will evade court orders or voluntarily dismiss the action in an attempt to make plaintiff's assets unreachable in the event costs are awarded to defendant").

35. *Romanowicz v. Alister & Paine, Inc.*, No. 17-CV-8937 (PAE) (KHP), ECF No. 24 (S.D.N.Y. June 22, 2018) (imposing monetary sanctions on Mr. Liebowitz after he "failed to attend the [inquest] hearing as ordered and failed to request an adjournment," in addition to other violations of the Court's orders).

36. *Terry v. Masterpiece Adver. Design*, No. 17-CV-8240 (NRB), 2018 U.S. Dist. LEXIS 104467, at *4-5 (S.D.N.Y. June 21, 2018) (rejecting Mr. Liebowitz's argument that the Court should award $20,000 in damages without conducting any inquest as having "no basis in law" and being "constructed from whole cloth," as previously ruled in the same case before Mr. Liebowitz "repeat[ed] [it] as part of this second motion").

37. *Steeger v. JMS Cleaning Servs., LLC*, No. 17-CV-8013 (DLC), 2018 WL 1363497, at *2-3 (S.D.N.Y. Mar. 15, 2018) (imposing monetary sanctions and a requirement that Mr. Liebowitz complete "four CLE credit hours in ethics and professionalism" in an effort to address Mr. Liebowitz's "pattern of omissions and misrepresentations," and noting that even Mr. Liebowitz's motion for reconsideration of the sanctions order "continues the pattern").

38. *Reynolds v. Hearst Comm'ns, Inc.*, No. 17-CV-6720 (DLC), 2018 U.S. Dist. LEXIS 35453, at *12 (S.D.N.Y. Mar. 5, 2018) ("Mr. Liebowitz also argues that plaintiff has not willfully disobeyed court orders, obstructed discovery, or increased the cost of litigation. This is demonstrably false. Mr. Liebowitz failed to comply with orders in this litigation, as he has in other lawsuits. Further, the failure to include the Campaign [to which the plaintiff had voluntarily given the photograph at issue, and which then passed the

photograph along to the defendant], as part of this suit, or to even mention the plaintiff's relationship with the Campaign in the complaint, will inevitably increase the cost of litigation.").

39. *Janik v. SMG Media, Inc*., No. 16-CV-7308 (JGK) (AJP), 2018 WL 345111, at *16 (S.D.N.Y. Jan. 10, 2018) (concluding that "the Liebowitz Law Firm made a total hash of discovery, requiring multiple court conferences," and "there was a failure of counsel to adequately communicate and coordinate with the plaintiffs, let alone with opposing counsel and the Court," and warning that "the Liebowitz Law Firm needs to consider its reputation with the Court and, frankly, clean up its act").

40. *Konangataa v. American Broad. Cos., Inc*., No. 16-CV-7382 (LAK), No. 16-CV-7383 (LAK), No. 16-CV-7472 (LAK), 2017 WL 2684067, at *2-3 (S.D.N.Y. June 21, 2017) (granting attorney's fees to Mr. Liebowitz's adversary because "no reasonable lawyer with any familiarity with the law of copyright could have thought that [the use of work at issue] . . . was anything but fair," and noting that "defendants may pursue any claims of professional misconduct on the part of plaintiff's attorney before appropriate disciplinary bodies").